UNITED STATES BANKRUPTCY COURT
DISTRICT OF PUERTO RICO

IN RE:                                            CASE NO. 15-05312

COCO BEACH GOLF & COUNTRY CLUB, INC.    CHAPTER 11

Debtor

MOTION FOR ENTRY OF ORDERS: (A) APPROVING THE ASSET PURCHASE
AGREEMENT AND SALE OF CERTAIN OF DEBTOR'S ASSETS, PURSUANT TO
SECTION 363 AND 365 OF THE BANKRUPTCY CODE, FREE AND CLEAR OF ALL
LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, AND (B) APPROVING THE
BIDDING PROCEDURES TO SOLICIT HIGHER AND BETTER OFFERS
AND SELECT THE SUCCESSFUL BIDDER

TO THE HONORABLE COURT:

Coco Beach Golf & Country Club, S.E. (the "Debtor"), by its undersigned counsel, hereby files this Motion for the Entry of Orders: (A) Approving the Asset Purchase Agreement and Sale of Certain of the Debtor's Assets, Pursuant to Section 363 and 365 of the Bankruptcy Code, Free and Clear of all Liens, Claims, Interests and Encumbrances, and (B) Approving the Bidding Procedures to Solicit Higher and Better Offers and Select the Successful Bidder (the "Sale Motion") pursuant to sections 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  In support of the Sale Motion, the Debtor respectfully states as follows.

PRELIMINARY STATEMENT

Through the Sale Motion, the Debtor seeks to preserve and maximize the value of its operations of a first class golf and country club (the "Golf & Country Club") in Río Grande, Puerto Rico, currently operating under the name of Trump International Golf

Coco Beach Golf & Country Club, Inc.                                    Case No. 15-05312
*Motion for Entry of Sale Order.......*                                              Page-2-

_____

Club Puerto Rico, by transferring and selling the Golf & Country Club with all of its
realty, facilities and related assets free and clear of all claims, liens interests and
encumbrances to OHorizons Global, LLC ("OHorizons"), subject to any higher or better
offers obtained through a competitive auction and sale process (the "Sale"), with the
proceeds of the Sale to be utilized by the Debtor towards payment to creditors in its
bankruptcy proceeding. The Sale is aimed at maximizing the value of the Debtor's
estate, and ensuring the continued operations of the Golf & Country Club, for the
benefit of the Debtor's creditors, employees, customers and members and, more
generally, the Commonwealth of Puerto Rico.

   For the reasons set forth herein, the Debtor requests the entry of the following
orders in connection with a proposed two-step process for the requested sale of its
assets:

   a. An order in the form attached hereto as Exhibit B (the "Bidding Procedures
      Order") that (i) approves the proposed process for the marketing and sale of
      the Purchased Assets, including procedures attached as Schedule 1 thereto
      establishing a bidding process and auction for the sale (the "Bidding
      Procedures"); (ii) approves the form of notice to parties regarding the sale
      (the "Sale Notice") attached as Schedule 2 thereto; (iii) approves the form
      of notice to contract parties whose executory contracts or leases are to be
      assumed and assigned pursuant to the Asset Purchase Agreement attached
      hereto as Exhibit A ("APA")[1] and the form of notice regarding the
      establishment of cure amounts with respect thereto, such form being

_____

[1] Capitalized terms, unless otherwise stated, shall have the meaning set forth in the APA.

**Coco Beach Golf & Country Club, Inc.**                                                    Case No. 15-05312

*Motion for Entry of Sale Order.......*                                                            Page-3-

_____

    attached as Schedule 3 thereto (the "Cure Notice"); and (iv) schedules a

    hearing (the "Sale Hearing") for the purpose of approving the sale of the

    Purchased Assets pursuant to the APA with OHorizons or a higher and better

    bidder at the auction; and

b.   At the time of the Sale Hearing, an order in substantially the same form as

    that attached hereto as Exhibit C (the "Sale Order") approving the sale of

    the Purchased Assets free and clear of liens, claims, interests and

    encumbrances, approving the assumption and assignment of the Debtor's

    executory contracts and unexpired leases and granting other relief.

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.    Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The statutory predicates for the relief requested herein are sections 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006 and Local Bankruptcy Rules 6004-1 and 9013-1(f).

## BACKGROUND

A. Debtor's Bankruptcy Case

4.    On July 13, 2015, Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and, since that date, has managed its affairs and operated its business as a debtor in possession, pursuant to sections 1107 and

Coco Beach Golf & Country Club, Inc.                                        Case No. 15-05312
*Motion for Entry of Sale Order.......*                                     Page-4-

_____

1108 of the Bankruptcy Code.

5.    Debtor is the owner of the Golf & Country Club, which includes, among
other things, two 18-hole golf courses and country club facilities currently operated
under the name Trump International Golf Club Puerto Rico. Prior to commencing this
bankruptcy proceeding, the Debtor began experiencing a substantial diminution in its
cash flow due to Puerto Rico's adverse economic situation, which has impacted the
tourism sector of the Island. Said situation, together with Debtor's inability to raise
sufficient income to remain competitive in today's marketplace, have resulted in
Debtor's need to sell the Golf & Country Club in order to maximize the value of its
assets for the benefit of creditors and the bankruptcy estate.

B.   Debtor's Pre-Petition Marketing Efforts.

6.    Prior to commencing its Chapter 11 case, the Debtor undertool marketing
efforts to sell the Golf & Country Club. Specifically, during the year 2011, Betteroads
Asphalt, LLC , the owner of Coco Beach Resort (the "Resort"), decided to sell all of the
Resort components owned by it, except for the Gran Meliá Hotel and Vacation Club.
The effort included the use of brokers and direct contacts with potential purchasers. To
that end, a virtual data room was set up to facilitate due diligence by the potential
purchasers. This opportunity was presented to potential purchasers in Puerto Rico and
outside the Island. This initial effort failed to generate any offers. Thereafter, during
the year 2013, the Resort was marketed in New York to private equity funds that
invest in the hospitality sector. Again, this initiative produced no offers. The following
year, negotiations were held with three groups, one from the United Kingdom, one
from New York and one stateside entity with significant holdings in Puerto Rico.

Coco Beach Golf & Country Club, Inc.                                    Case No. 15-05312
*Motion for Entry of Sale Order.......*                                 Page-5-

_____

However, these negotiations also failed to produce an agreement. Finally, in January of
the current year, OHorizons expressed its interest in acquiring the Resort. As a result,
the Debtor and OHorizons executed an exclusivity agreement to allow OHorizons to
conduct preliminary due diligence, which led to the execution of a master agreement
for the purchase by OHorizons of the Resort, including the Golf & Country Club. The
Asset Purchase Agreement (the "APA") for the Golf & Country Club and related assets
were executed on July 13, 2015 by the Debtor and OHorizons. In summary, a
continuos marketing effort in Puerto Rico and offshore produced no buyers other than
OHorizons.

7.      The APA to acquiere the Purchased Assets will prevent the continued
deterioration of the Golf & Country Club and ensure that it remains open and operating
at its maximum capacity.  OHorizons is not an insider or otherwise related in any way
to the Debtor, and all negotiations were conducted at arms-length with the assistance
of counsel.

8.      OHorizons and Debtor agreed to the herein proposed Sale which, in
Debtor's business  judgment is the best current option available, and the only
immediate vehicle that will halt the deterioration of the Purchased Assets, will
maximize their value and recovery to the bankruptcy estate, and inure to its benefit.

C.  The Proposed Stalking Horse Purchase Agreement.

9.      A copy of the APA is attached hereto as Exhibit A.

10.     The principal terms of the APA and the Sale are summarized below.  To
the extent that there are any discrepancies between the following summary and the
APA, the APA shall govern and control.

Coco Beach Golf & Country Club, Inc.                                        Case No. 15-05312

*Motion for Entry of Sale Order.......*                                          Page-6-

_____

a. <u>Assets to be Sold</u>.  The "Purchased Assets" consist of substantially all of the assets of the Debtor, except for the Excluded Assets, used in or related to or held for use in connection with the operation of the Business. The Purchased Assets are described in more detail in the APA.

b. <u>Free and Clear</u>.  The Purchased Assets are to be sold free and clear of all liens, claims encumbrances and interests.

c. <u>Purchase Price</u>.  The aggregate consideration for the Purchased Assets is specified in the APA as $2,042,528.01 in Cash plus the assumption by OHorizons of the Assumed Contracts and any associated cure costs.

d. <u>Deposit</u>.  OHorizons will advance a deposit of $75,000, subject to the terms of the APA.

e. <u>Breakup Fee/Expense Reimbursement</u>.  Under the APA, OHorizons will be entitled to a Breakup Fee of $60,000 and an Expense Reimbursement of $50,000.

f. <u>Closing</u>.  To occur upon satisfaction of various conditions set forth in the APA but, in any event, no later than March 31, 2016.

11.    The Debtor believes that the best way to maximize the value of its estate for the benefit of creditors, and to ensure the continued operations of the Golf & Country Club, is to conduct a sale of the Purchased Assets to OHorizons or a third party submitting a competing proposal with superior terms. See Mr. Jorge L. Díaz Irizarry's declaration attached hereto as Exhibit A-1.

12.    The Debtor proposes to conduct such a sale in accordance with the Bidding Procedures set forth on Schedule 1 to the attached Exhibit B.

13.    The Debtor requests that this Court set the deadline by which a competing bid for the Purchased Assets must be submitted in writing in accordance with the Bidding Procedures (the "Bid Deadline"), on a date within forty-five days from entry of the Bidding Procedures Order. Additionally, assuming the Debtor receives one or more Qualified Bids (as defined in the Bidding Procedures), the Debtor requests that

Coco Beach Golf & Country Club, Inc.                                    Case No. 15-05312

*Motion for Entry of Sale Order.......*                                     Page-7-

_____

an auction be scheduled within five (5) days from the Bid Deadline (the "Auction

Date").

14.     In connection with the Sale, the Debtor seeks to assume and assign

certain of its executory contracts and unexpired leases (the "Assumed Contracts"),

which contracts and leases will be designated by OHorizons or a third party submitting

a competing proposal prior to the Bid Deadline. OHorizons or such third party

submitting a competing proposal will cure all monetary defaults under such Assumed

Contracts at closing of the Sale to the extent required by section 365(b) of the

Bankruptcy Code and as set forth in the APA.

15.     Within five (5) days from entry of the Bidding Procedures Order, the

Debtor will file with the Court and serve on each party to an Assumed Contract a

notice setting forth the amount of cure owed thereunder according to the Debtor's

books and records (the "Cure Notice"). The Cure Notice will state the amount that the

Debtor believes is necessary to assume such contract or lease pursuant to section 365

of the Bankruptcy Code (the "Cure Amount"), and notify each party that such party's

lease or contract may be assumed and assigned to a purchaser.

16.     The Cure Notice will require that any objection to the Cure Amount be

filed on or before a deadline prior to the Sale Hearing that is established by the Court

(the "Cure Objection Deadline"). The Cure Notice will also provide that any objection to

the Cure Amount must state with specificity what cure the party to the Assumed

Contract believes is required with appropriate documentation in support thereof. The

Debtor requests that, if an objection is timely filed, the Court resolve any dispute

regarding the amount of any disputed Cure Amount or objection to the assumption

_____

and assignment of an Assumed Contract at the Sale Hearing. If no objection is timely received, the Debtor requests that the Cure Amount set forth in the Cure Notice be controlling notwithstanding anything to the contrary in any assumed contract or other document.


## BASIS FOR RELIEF AND APPLICABLE AUTHORITY

### A. The Court Should Approve The Sale.

17.    First, section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1). A debtor in possession is given these rights by section 1107(a) of the Bankruptcy Code. 11 U.S.C. §1107(a). Moreover, section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. 105(a).

18.    Courts have consistently held that approval of a proposed sale of property pursuant to section 363(b) is appropriate if the record reveals a "sound business purpose" for approval of the proposed sale outside of a plan. See, In re Eldercare, 390 B.R. 762, 770 (Bankr. D. Conn. 2008); In re Phoenix Steel Corp., 82 B.R. 334, 335 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of a section 363 sale in a Chapter 11 case are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith."). The court may find that a sound business purpose for

_____

the sale of assets outside the ordinary course of business exists when such a sale is necessary to preserve the value of assets for the estate, its creditors or interest holders. Comm. of Equity Security Holders v. The Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063 (2nd Cir. 1983).

19.     Second, section 363(f) of the Bankruptcy Code allows a debtor to sell assets free and clear of all liens, claims, interests and encumbrances (with any such liens, claims, interests and encumbrances attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets). More specifically, section 363(f) of the Bankruptcy Code provides:

> The trustee[2] may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if --
>> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>> (2) such entity consents;
>> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>> (4) such interest is in bona fide dispute; or
>> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

20.     Therefore, in a sale of assets free and clear of any interest in such assets of an entity other than the estate pursuant to section 363(b) of the Bankruptcy Code, the debtor must establish that at least one of the five requirements set forth in section 363(f) of the Bankruptcy Code is present.

21.     The Debtor submits that the Sale satisfies the "sound business purpose test", is a proper exercise of the Debtor's business judgment, and is in the best

_____

[2] To be understood as debtor-in-possession, pursuant to section 1107 of the Bankruptcy Code.

Coco Beach Golf & Country Club, Inc.                                    Case No. 15-05312
*Motion for Entry of Sale Order.......*                                          Page-10-

_____

interest of the estate and should be approved for a number of reasons. First, as
described above, the Debtor can no longer afford to operate the Golf & Country Club.
The Sale ensures that the Golf & Country Club's operations will remain continuous
and on-going, will avoid their closing or interruption, will ensure jobs in Puerto Rico's
depressed economy and will greatly inure to the benefit of the estate.  Since the
Debtor has no equity in the Purchased Assets, absent this proposed Sale there
would be virtually no recoveries to any creditor other than Debtor's secured creditor,
Puerto Rico Tourism Development Fund. Moreover, there are no other current offers
to purchase the Purchased Assets. The Debtor believes that the auction process
contemplated herein will obtain the highest and best offer for the Purchased Assets or,
at the very least, will confirm that OHorizons' offer is the highest and best offer for
such assets. Accordingly, the Debtor believes that the Sale is in the best interest of
the estate and should be approved. See, In re Wiedbolt Stores, Inc., 92 B.R. 309, 312
(N.D. Ill. 1988).

        22.    Further, the Debtor submits that the Sale should be free and clear of
all liens, claims, encumbrances and interests, as the Debtor submits that at least
one of the requirements of section 363(f) of the Bankruptcy Code, if not more, are met
since, pursuant to the Bidding Procedures attached as Schedule 1 to Exhibit B
hereto, any entity holding liens, claims, encumbrances and other interests with
respect to the Purchased Assets will receive notice of the Sale Motion, of the APA
and Bidding Procedures. Therefore, all parties in interest will be given sufficient
opportunity to object to the relief requested herein. To the extent, however, that any
such entity does not object to the Sale Motion, that  entity  should  be  deemed  to

**Coco Beach Golf & Country Club, Inc.**                                              Case No. 15-05312
*Motion for Entry of Sale Order.......*                                                       Page-11-

_____

have consented to the relief sought herein. See, Futuresource LLC v. Reuters
Ltd., 312 F.3d 281, 285-86 (7th Cir. 2002) ("It is true that the Bankruptcy Code
limits the conditions under which an interest can be extinguished by a bankruptcy
sale, but one of those conditions is the consent of the interest holder, and lack of
objection (provided of course there is notice) counts as consent. It could not be
otherwise; since the transaction costs would be prohibitive if everyone who might have
an interest in the bankrupt's assets had to execute a formal consent before they could
be sold.") (internal citations omitted). Thus, to the extent that no party holding a lien
objects to the relief requested in the Sale Motion and the form of the Sale Order
attached as Exhibit C hereto, the Sale satisfies section 363(f)(2) of the Bankruptcy
Code.

B. The Assumption and Assignment of Contracts Should Be Authorized.

23.    Pursuant to section 365(a) of the Bankruptcy Code, a trustee,
"subject to the court's approval, may assume or reject any executory contract or
unexpired lease of the debtor." 11 U.S.C. § 365(a). Section 365(b)(1) of the
Bankruptcy Code, in turn, codifies the requirements for assuming an unexpired lease
or executory contract of a debtor.  This subsection provides:

> (b)(1) If there has been a default in an executory contract or unexpired
> lease of the debtor, the trustee may not assume such contract or lease
> unless, at the time of assumption of such contract or lease, the trustee
>> (A)    cures, or provides adequate assurance that the trustee will
>> promptly cure, such default ...;
>> (B)    compensates, or provides adequate assurance that the
>> trustee will promptly compensate, a party other than the debtor to
>> such contract or lease, for any actual pecuniary loss to such party
>> resulting from such default; and
>> (C)    provides adequate assurance of future performance under
>> such contract or lease.

Coco Beach Golf & Country Club, Inc.                                    Case No. 15-05312
*Motion for Entry of Sale Order.......*                                              Page-12-

_____

24.    Section 365(f)(2) of the Bankruptcy Code provides, in pertinent part, that:

> The trustee may assign an executory contract or unexpired lease of the debtor only if —
>     (A)    the trustee assumes such contract or lease in accordance with the provisions of this section;  and
>     (B)    adequate assurance of future performance by the assignee of such contract or lease is  provided, whether or not  there has been  a default in such contract or lease.

25.    The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "'practical pragmatic construction.'" EBG Midtown S. Corp. v. McLaren/Hart Envtl. Eng'g. Corp. (In re Sanshoe Worldwide Corp.), 139 B.R. 585, 592 (S.D.N.Y. 1992) (citations omitted), aff'd, 993 F.2d 300 (2d Cir. 1993). See, Carlisle Homes, Inc. v. Azzari, 103 B.R. 524, 538 (Bankr. D.N.J. 1988) ("Although no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance.").

26.    Among other things, adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. See, In re Bygaph, Inc., 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance of future performance is present when prospective assignee of has sufficient financial resources and has expressed willingness to devote the required funding in order to provide the business with a strong likelihood of success).

27.    To the extent that any defaults exist under any of the Assumed Contracts to be assigned in connection with the Sale, OHorizons shall cure any such

_____

default in connection with such assumption and assignment subject to the terms and conditions of the APA. Moreover, the Debtor will, if necessary, proffer evidence to demonstrate OHorizons' ability and willingness to perform under any and all Assumed Contracts pursuant to the Sale.

28.     The Sale Hearing will therefore provide the Court and other interested parties ample opportunity to evaluate and, if necessary, challenge the ability of OHorizons to provide adequate assurance of future performance under the Assumed Contracts.

29.     Debtor requests that any counterparty to an assumed contract that fails to object to the Cure Notice by the Cure Objection Deadline be deemed to have consented to the treatment of its assumed contract under section 365 of the Bankruptcy Code (including the proposed cure amount) and to this Sale Motion. See, Hargrave v. Twp. of Pemberton (In re Tabone, Inc.), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to sale motion, creditor deemed to consent); Pelican Homestead v. Wooten (In re Gabel), 61 B.R. 661, 667 (Bankr. W.D. La. 1985).

C. The Court Should Approve the Bidding Procedures.

30.     The Sale is subject to Bidding Procedures which provide for competitive bidding and an auction process, and higher or otherwise better offers being made with respect to the Purchased Assets.

31.     The Bidding Procedures provide the terms to consider and submit proposals to acquire the Purchased Assets, the requisites for any such proposals, the deadline to submit them, the time-frame for parties to conduct due diligence, the proposed auction date, as well as the process for selecting the Successful Bidder.

**Coco Beach Golf & Country Club, Inc.**                                    **Case No. 15-05312**
*Motion for Entry of Sale Order.......*                                                  Page-14-

_____

32.     The Debtor submits that the Bidding Procedures, including the Break-Up Fee and Expense Reimbursement to OHorizons set forth therein, are fair and reasonable and customary in bankruptcy sales of this type and size.

D. **The Successful Bidder Should be Afforded all Protections Under Section 363(m).**

33.     Finally, the Debtor requests that the Court determine that OHorizons, if selected as the Successful Bidder, is a "good faith" purchaser within the purview of section 363(m) of the Bankruptcy Code, as the APA was negotiated at arm's-length between OHorizons and the Debtor, both of which were represented by counsel, and all parties to the agreed upon Sale have acted in good faith.

34.     Section 363(m) of the Bankruptcy Code protects a good-faith purchaser's interest in property purchased from a debtor notwithstanding that the sale conducted under section 363(b) of the Bankruptcy Code may be later reversed or modified on appeal. Specifically, section 363(m) states that:

> The reversal or modification on appeal of an authorization under [section 363(b)]. . . does not affect the validity of a sale . . . to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

35.     Pursuant to section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. In re Mark Bell Furniture Warehouse, Inc., 992 F.2d 7, 8 (1st Cir. 1993). The good faith requirement is related to the integrity of the purchaser's conduct in the course of the sale proceedings. In re Rock Industries Machinery Corp., 572 F.2d 1198 (7th Cir. 1978).

36.     Essentially, section 363(m) affords "finality to judgments approving

_____

sales in bankruptcy by protecting good faith purchasers, the innocent third parties who rely on the finality of bankruptcy judgments in making their offers and bids. . . . The finality and reliability of the judicial sales enhance the value of the assets sold in bankruptcy." In re Stadium Management Corp., 895 F.2d 845, 847 (1st Cir. 1990) citing Tri-Cran, Inc. v. Fallon (In re Tri-Cran, Inc.), 98 Bankr. 609, 617 (Bankr. D.Mass. 1989) (citations omitted); In re Onouli-Kona Land Co., 846 F.2d 1170, 1172-73 (9th Cir. 1988); In re Sax, 796 F.2d 994, 998 (7th Cir. 1986).

37.    The effect of section 363(m) is that "when an order confirming a sale to a good faith purchaser is entered and a stay of that sale is not obtained, the sale becomes final and cannot be reversed on appeal." In re Stadium Management Corp., 895 F.2d at 847 quoting Creditor Committee v. Armstrong Business Credit Corp. (In re Saco Local Development Corp.), 19 Bankr. 119, 121 (BAP 1st Cir. 1982). Absent a stay, the court must dismiss a pending appeal as moot. In re Stadium Management Corp., 895 F.2d at 847 citing In re the Charter Co., 829 F.2d 1054 (11th Cir. 1987) (per curiam), cert. denied, 485 U.S. 1014, 108 S. Ct. 1488, 99 L. Ed. 2d 715 (1988); Miami Center Partnership v. Bank of New York, 820 F.2d 376, corrected in part and rehearing denied, 826 F.2d 1010 (11th Cir. 1987), vacating [826 F.2d 1010], reaffirming [820 F.2d 376] and rehearing denied, 838 F.2d 1547 (11th Cir. 1988), cert. denied, 488 U.S. 823, 109 S. Ct. 69, 102 L. Ed. 2d 46 (1988); In re Sax, 796 F.2d 994 (7th Cir. 1986); International Union, U.A.W. v. Morse Tool, Inc. (In re MTI Holding Corp.), 85 Bankr. 666, 668 (D. Mass. 1988).

**Coco Beach Golf & Country Club, Inc.**                                      Case No. 15-05312
*Motion for Entry of Sale Order.......*                                                   Page-16-

_____

38.     Although the Bankruptcy Code does not define "good faith purchaser",
courts have adopted the traditional equitable definition of one who purchases the
assets for value, in good faith, and without notice of adverse claims. To constitute
lack of good faith, a party's conduct in connection with the sale must usually
amount to fraud or collusion between the purchaser and other bidders or the
trustee, or an attempt to take grossly unfair advantage of other bidders.

39.     The Debtor submits that OHorizons is a "good faith purchaser" as
defined above. Moreover, given the open and transparent sale process
contemplated in the Bidding Procedures and in this Sale Motion, any Successful
Bidder should also be deemed a good faith purchaser as defined above.

E.  Form and Manner of Notice.

40.     The Debtor will provide the Sale Notice to any known parties who have
previously expressed an interest in the Purchased Assets or who may be interested
in purchasing the Purchased Assets, all creditors of the Debtors, all parties who may
have liens or other interests in the Purchased Assets and all Assumed Contract
parties, in accordance with Bankruptcy Rules 2002(a)(2), 2002(c)(1) and 6004(c),
by mailing such notice within five (5) days from entry of the Bidding Procedures
Order.  In addition, the Debtor will publish a form of the Sale Notice in El Vocero
Newspaper, or some similarly suitable publication.

41.     The Debtor submits that the form and manner of service of the Sale
Notice is appropriate under the circumstances and complies with all applicable
Bankruptcy Rules, and hereby requests approval of same.

42.     Further, in compliance with Local Bankruptcy Rule 6004-1 and in

_____

support of the Sale Motion, Debtor submits as Exhibits D-1, D-2 and D-3 the following documents: (i) Title Study of the Real Property; (ii) Appraisal of the Real Property; and (iii) CRIM Debt Certificate.

43.     Finally, the Debtor requests that the Court waive any 14-day stay that might be imposed under Bankruptcy Rules 6004(h) and 6006(d) for any order authorizing the sale of property and the assignment of the Assumed Contracts such that the Debtor can close the Sale promptly after the entry of the Sale Order.

CONCLUSION

WHEREFORE, the Debtor hereby respectfully requests that the Court grant the relief requested within this Motion, including (i) entry of the Bidding Procedures Order approving the Bidding Procedures, approving the Sale Notice and Cure Notice, and setting a date for the Sale Hearing; (ii) at the conclusion of the Sale Hearing, entry of the Sale Order, and (iii) granting such other relief as is just and proper.

NOTICE

Within twenty-one (21) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the clerk's office of the United States Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is

Coco Beach Golf & Country Club, Inc.                                    Case No. 15-05312

*Motion for Entry of Sale Order.......*                                              Page-18-

_____

against public policy; or (iii) in the opinion of the court, the interest of justice requires
otherwise.

CERTIFICATE OF SERVICE: I hereby certify that on this same date, I
electronically filed the foregoing with the Clerk of the Court using the CM/ECF
system, which will send notification of such filing to all CM/ECF participants in this
case, including, but not limited to, the U.S. Trustee.  Copy of the Sale Motion and
its Exhibits will be sent by First Class Mail to those parties listed on the Debtor's List
of Creditors Holding the 20 Largest Unsecured Claims; to the Civil Process Clerk,
Bankruptcy Unit, Office of the U.S. Attorney for the District of Puerto Rico, Torre
Chardón Suite 1201, 350 Carlos E. Chardón Street, San Juan, PR 00918; Attorney
General of the United States, Department of Justice for the State of Washington,
950 Pennsylvania Avenue, NW, Washington DC 20530-0001; Internal Revenue
Service, PO Box 7346, Philadelphia, PA 19101-7346; Centro de Recaudación de
Ingresos Municipales, Legal Division, Att. Carmen B. Figueroa, Esq., PO Box
195387, San Juan, PR 00919-5387, via e-mail cfigueroa@crimpr.net and
cpfbkcy@gmail.com; Department of Justice, Commonwealth of Puerto Rico, Att.
Migda L. Rodríguez Collazo, Esq., PO Box 9020192, San Juan, PR 00902-0192, via
e-mail bankruptcyjusticia.gobierno.pr@gmail.com and mlrcbankruptcy@gmail.com;
Melba Acosta Febo, President of Puerto Rico Tourism Development Fund,
melba.acosta@bgfpr.com , PO Box 42001, Minillas Station, San Juan, PR 00940-
2001; and to OHorizons Global, LLC, through Harry O. Cook, Esq., MCConnel
Valdés, LLC, 270 Muñóz Ave., San Juan, PR 00918, via e-mail hoc@mcvpr.com; and
Erick Pérez Ochoa, Esq., Adsuar Muñiz Goyco Seda & Pérez-choa, PSC, 208 Ponce

**Coco Beach Golf & Country Club, Inc.**                                                    **Case No. 15-05312**
*Motion for Entry of Sale Order.......*                                                          Page-19-

_____

de León Ave., Suite 1600, San Juan, PR 00918, via e-mail to epo@amgrlaw.com.

   San Juan, Puerto Rico, this 13th day of July 2015.

                                        CHARLES A CUPRILL, P.S.C. LAW OFFICES
                                        356 Fortaleza Street
                                        Second Floor
                                        San Juan, Puerto Rico 00901
                                        Tel:   (787) 977-0515
                                        Fax:   (787) 977-0518
                                        E-Mail:  ccuprill@cuprill.com

                                        s/CHARLES A. CUPRILL-HERNÁNDEZ
                                        USDC-PR 114312