UNITED STATES BANKRUPTCY COURT
DISTRICT OF PUERTO RICO

IN RE:

COCO BEACH GOLF & COUNTRY CLUB, INC.

Debtor

CASE NO. 15-05312(ESL)

CHAPTER 11

**AMENDED ORDER (A) APPROVING THE BIDDING PROCEDURES TO SOLICIT HIGHER AND BETTER OFFERS AND SELECT THE SUCCESSFUL BIDDER, FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (B) SCHEDULINGA FINAL SALE HEARING AND APPROVING THE FORM AND MANNEROF NOTICE THEREOF AND (C) GRANTING RELATED RELIEF**

This matter coming before the Court on the *Motion for Entry of Orders: (A) Approving The Asset Purchase Agreement And Sale Of Certain Of Debtor's Assets, Pursuant To Section 363 And 365 Of The Bankruptcy Code, Free And Clear Of All Liens, Claims, Interests And Encumbrances, and (B) Approving The Bidding Procedures To Solicit Higher And Better Offers And Select The Successful Bidder*[1] (the "Sale Motion"). In the Sale Motion, the Debtor requested, pursuant to sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006, entry of (i) an order: (a) authorizing procedures for the marketing and sale of the Purchased Assets (the "Bidding Procedures Relief") including, but not limited to, (1) approving the procedures that are attached hereto as **Schedule 1** (the "Bidding Procedures"), and (2)approving the conduct of an auction for the sale of the Purchased Assets (the "Auction"); (b) scheduling a hearing (the "Sale Hearing") to consider approving (1) the sale of substantially all of the assets of the Debtor and (2) the terms of the assumption and assignment of certain related executory

---

[1] Unless otherwise defined, capitalized terms used herein shall have the meaning ascribed to them in the Sale Motion and its exhibits, as applicable.

contracts and unexpired leases to which the Debtor is a party (any such contract or lease, an "Assumed Contract"); and (c) authorizing and approving the form and manner of the Debtor's proposed notice of the Auction and the Sale Hearing; and (ii) an order authorizing and approving the Sale (as such term is defined below) to the Successful Bidder (as such term is defined in the Bidding Procedures) (the "Sale Order").

The Court (a) having reviewed the Sale Motion and the Declaration of Jorge L. Díaz-Irizarry under Penalty of Perjury; (b) having conducted a hearing on August 10, 2015 to consider the approval of the Bidding Procedures (the "Hearing" ) and the objections to the Sale Motion filed by the United States Trustee and the Puerto Rico Tourism Development Fund (the "TDF"); (c) having reviewed the record and statements of counsel and the evidence presented at the Hearing, as well as Debtor's notification of the Sale Motion as directed thereat, the subsequent limited opposition of the TDF to the Bidding Procedures and the Debtor's consent thereto; IT IS HEREBY FOUND AND DETERMINED THAT:

    A.    The Debtor has articulated good and sufficient reasons for, and the best interests of its estate will be served by, this Court granting the Bidding Procedures Relief requested in the Sale Motion relating to (1) the stalking horse Asset Purchase Agreement (including all exhibits, schedules and ancillary agreements related thereto, the "APA") by and between the Debtor and OHorizons Global, LLC, or its designee (the "Buyer") which proposes the sale of the Purchased Assets to the Buyer (the "Sale"), and (2) the procedures described below for the determination of the amounts necessary to cure defaults under the Assumed Contracts (the "Cure Costs") so as to permit the assumption and assignment under

2

section 365 of the Bankruptcy Code of the Assumed Contracts to the Buyer, and (3) the forms of the Sale Notice and Cure Notice attached with the exhibits to the Sale Motion.

B. The Debtor has articulated good and sufficient reasons for, and the best interests of its estate will be served by, this Court scheduling a subsequent Sale Hearing to consider granting other relief requested in the Sale Motion, including approval of the Sale and the transfer of the Purchased Assets to the Successful Bidder free and clear of all liens, claims, encumbrances and other interests pursuant to section 363(f) of the Bankruptcy Code.

**IT IS HEREBY ORDERED THAT:**

1. The Bidding Procedures Relief requested in the Sale Motion is GRANTED to the extent set forth herein.

2. The Bidding Procedures, which are attached hereto as **Schedule 1**, are hereby approved and shall govern all bids and bid proceedings relating to the sale of the Purchased Assets.

3. The good faith deposits of the Buyer and any other Potential Bidder shall be held in escrow and shall not become property of the Debtor's bankruptcy estate unless and until released from escrow to the Debtor pursuant to the terms of the applicable escrow agreement.

4. The deadline for submitting a Qualified Bid (as such term is defined in the Bidding Procedures) shall be 5:00p.m. (Prevailing Eastern Time) on November 16, 2015 (the "Bid Deadline").

5. As further described in the Bidding Procedures, the Debtor shall conduct the Auction within five (5) days from the Bid Deadline. To that end, the

Auction will be held at 10:00 a.m. (Prevailing Eastern Time) on November 23, 2015 if more than one Qualified Bid for the Purchased Assets is timely received. If no other Qualifying Bids are received, no Auction shall be necessary.

6. The Court shall conduct the Sale Hearing, on **December 3, 2015** at 10:30 a.m. (Prevailing Eastern Time), at which hearing the Court will consider approval of the Sale to the Successful Bidder.

7. The form of the Sale Notice attached hereto as **Schedule 2** is hereby approved in all respects, and the Debtor is authorized to advertise a publishable form thereof (the "Publication Notice") as set forth herein.

8. Parties in interest shall receive or be deemed to have received good and sufficient notice of all relief sought in the Sale Motion, including but not limited to the Sale Hearing, the proposed Sale Order, the proposed sale of the Purchased Assets and the Cure Costs as well as the proposed assumption and assignment of the Assumed Contracts. Within five (5) days from entry of this Order (the "Mailing Deadline"), the Debtor shall (a) publish the Publication Notice one time in El Vocero Newspaper or such other suitable publication as determined by the Debtor; (b) serve a copy of the Sale Notice upon (i) all of the Debtor's creditors that have filed proofs of claim in the Debtor's chapter 11 cases or whose claims are listed by the Debtor in its schedules of liabilities, (ii) any party who, in the past year, expressed in writing to the Debtor an interest in the Purchased Assets or the Debtor's other assets; (iii) nondebtor parties to the Assumed Contracts; (iv) all parties who are known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in any of the Debtor's assets; (v) the Internal Revenue Service; and (vi) applicable local taxing authorities.

4

9. Any objections to approval of the Sale for any reason (other than for objections to any proposed Cure Costs or the provision of adequate assurance of future performance under Assumed Contracts by the Successful Bidder), including the sale of the Purchased Assets free and clear of liens, claims, encumbrances and other interests pursuant to section 363(f) of the Bankruptcy Code, shall be filed by **November 27, 2015** (the "Sale Objection Deadline").

10. Except as provided in paragraph 12 below, to be considered, objections to the Sale or any of the related relief sought therein must (a) be in writing, (b) state the basis of such objection with specificity, (c) conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for the District of Puerto Rico; and (d) be filed with the Bankruptcy Court and served in accordance with the rules of the Bankruptcy Court upon: (i) *Charles A. Cuprill, PSC Law Offices, attention Charles A. Cuprill Hernández, Esq., 356 Fortaleza Street, Second Floor, San Juan, Puerto Rico 00901; McConnel Valdés, LLC, attention Harry O. Cook, Esq., 270 Muñóz Rivera Ave., San Juan, Puerto Rico 00918; Adsuar Muñiz Goyco Seda & Pérez-choa, PSC, 208 Ponce de León Ave., attention Eric Pérez-Ochoa, Esq., Suite 1600, San Juan, PR 00918; Puerto Rico Tourism Development Fund, attention Melba Acosta Febo, PO Box 42001, Minillas Station, San Juan, PR 00940-2001; and the Office of United States Trustee for the District of Puerto Rico, Ochoa Building, 500 Tanca Street, Suite 301, San Juan, PR 00901-1922* (collectively, the "Notice Parties"), so as to be actually received no later than the Sale Objection Deadline.

11. The form of the Cure Notice attached hereto as **Schedule 3** is hereby approved in all respects. Within five (5) days from entry of this Order, the Debtor

5

shall file with the Court a schedule of cure obligations for the Assumed Contracts that are being made available to the Buyer for potential assumption and assignment (a "Contract and Cure Schedule"), and shall include the same with the service of the Cure Notice. The Contract and Cure Schedule shall include a description of each Assumed Contract to potentially be assumed and assigned under the APA and the Cure Costs, if any, necessary to cure such Assumed Contracts pursuant to section 365 of the Bankruptcy Code. A copy of the Cure Notice, together with the Contract and Cure Schedule, shall be served by first-class mail on each of the nondebtor parties listed on the Contract and Cure Schedule, within five (5) days from entry of this Order. As soon as practicable after the receipt of a Qualified Bid (which is due by 5 p.m. Prevailing Eastern Time on November 16, 2015) seeking the assumption and assignment of an executory contract or unexpired lease of the Debtor not listed on the Contract and Cure Schedule (any such contracts, "Alternative Bidder Contracts"), the Debtor shall file notice of such change with the Court and serve upon each affected counterparty of the applicable Alternative Bidder Contracts the Cure Notice and the amount of any Cure Costs associated with such Alternative Bidder Contracts.

12. Any objections to any proposed Cure Costs for any Assumed Contract (any such objection, a "Cure Objection", and any such disputed costs, "Disputed Cure Costs") or to the provision of adequate assurance of future performance under any Assumed Contracts (an "Adequate Assurance Objection"), must be in writing and filed with the Court and served on the Notice Parties so as to be received no later than thirty (30) days after the Mailing Deadline; provided, however, counterparties to Alternative Bidder Contracts shall have until the start of the Sale

Hearing to file and serve any objections to the assumption and assignment of an Alternative Bidder Contract.

13. If no timely Cure Objection or Adequate Assurance Objection is filed and served with respect to an Assumed Contract or Alternate Bidder Contract, then (a) the Cure Costs identified in the Contract and Cure Schedule with respect to the Assumed Contracts will be the only amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults under such Assumed Contracts or Alternate Bidder Contract if the Buyer (or other Successful Bidder) ultimately decides to have the applicable Assumed Contract or Alternate Bidder Contract assumed and assigned to it; (b) the Successful Bidder will be deemed to have provided adequate assurance of future performance under the applicable Assumed Contract in accordance with section 365(f)(2)(B) of the Bankruptcy Code if the Buyer (or other Successful Bidder) ultimately decides to have the applicable Assumed Contract assumed and assigned to it; and (c) the party failing to timely file a Cure Objection or Adequate Assurance Objection shall be forever barred from asserting such objections against the Debtor, its estate or the Successful Bidder.

14. If a timely Cure Objection or Adequate Assurance Objection is received and any such objection cannot otherwise be resolved by the parties, such objection shall be resolved at the Sale Hearing or at a subsequent hearing set by the Court.

15. Except as may otherwise be agreed to by the parties to an Assumed Contract, the defaults under the Assumed Contracts that need to be cured in accordance with section 365(b) of the Bankruptcy Code shall be cured by cash payments made by the Buyer in accordance with the provisions of the APA (or any other Successful Bidder as determined at the conclusion of the Auction).

16. Notwithstanding any provision in this Order, the APA or the Bidding Procedures, this Order does not satisfy, and the Court has not yet determined if the Debtor has satisfied, the requirements of section 365 of the Bankruptcy Code for any particular Assumed Contract, including those relating to the cure of any existing default or providing adequate assurance of future performance. No Assumed Contract will be deemed assumed and assigned until the Court has entered an order authorizing the assumption and assignment of a particular Assumed Contract and the Sale pertaining to such Assumed Contract is closed. The Successful Bidder will have no rights in and to any particular Assumed Contract until such time as the particular Assumed Contract is assumed and assigned to the Successful Bidder.

17. The failure of any objecting person or entity to timely file its objection to the Sale and related relief shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Sale Motion, or to the consummation and performance of the Sale contemplated by the APA, including the transfer of the Purchased Assets to the Successful Bidder free and clear of all liens, claims, encumbrances and other interests.

18. The Court shall retain exclusive jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

Dated: September 2, 2015
San Juan, Puerto Rico

_____
UNITED STATES BANKRUPTCY JUDGE

**SCHEDULE 1- BIDDING PROCEDURES**

## AMENDED BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale (the "Proposed Sale") of certain of the assets of Coco Beach Golf & Country Club, S.E. (the "Seller") as contemplated in that certain Asset Purchase Agreement (the "APA") between the Seller and the stalking horse purchaser referred therein as the buyer (the "Buyer"). Terms used and not defined herein, shall have the meanings assigned to them in the APA. To the extent of any inconsistency between these Bidding Procedures and the APA, the APA shall govern.

These Bidding Procedures describe, among other things, the form of bids and the manner in which bidders and bids become qualified, the conduct of an Auction, if necessary (as defined herein), and the ultimate selection of the Successful Bidder(s) (as defined herein) (the "Bidding Process") for the Purchased Assets (as defined herein). The Seller has sought protection under title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Puerto Rico (the "Bankruptcy Court") and commenced therein a voluntary chapter 11 case under Case No. 15-05312 (the "Bankruptcy Case"). The Proposed Sale is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court pursuant to sections 363 and 365 of the Bankruptcy Code.

### Purchased Assets

The Purchased Assets proposed to be sold as part of the Bankruptcy Case are defined more specifically in the APA and include the real estate generally referred to as the Trump International Golf Club (the "Golf Club") and the personal property within the Golf Club owned by the Seller (collectively, the "Purchased Assets").

Except as set forth in the APA, the Proposed Sale of the Purchased Assets shall be "as is" and "where is". The Seller has not made, is not making and shall not be deemed to be making any representation or warranty whatsoever, express or implied, regarding, without being limited to, the Purchased Assets, except for those representations and warranties provided in the APA.

### Overview of Sale

The Seller will seek approval from the Bankruptcy Court of the stalking horse proposal and of an orderly auction and sale process to consider Qualified Bids (as defined below) and select a Successful Bidder who shall acquire, subject to the Bidding Procedures described below, the Purchased Assets free and clear of any and all liens, claims, liabilities, encumbrances, and other interests, pursuant to sections

363 and 365 of the Bankruptcy Code. In consideration therefor, on the Closing Date, among other things, the Successful Bidder shall remit an indefeasible cash payment (or, a combination of an indefeasible cash payment and a non-cash consideration equal to the Purchase Price (except for the Buyer which shall only remit a cash payment equal to the cash consideration, provided that if Buyer increases its bid pursuant to these Bidding Procedures, consideration in excess of the cash consideration provided under the APA may be in the form of cash and/or non-cash consideration)), without any financing contingency, to the Seller – or directly to the Tourism Development Fund ("TDF"), as instructed by Seller, except, that a portion of the Purchase Price shall be carved out from the Purchase Price to cover certain outstanding debts of the Seller and expenses related to the Proposed Sale (the "Carve Out"). The Carve Out shall be paid directly to the Seller. If the Buyer is the Successful Bidder, the Buyer shall select the notary for the Proposed Sale and the release of the liens over the collateral held by TDF.

### Bankruptcy Filing

The Proposed Sale includes the following milestones (which, similar to the other dates included in this notice and subject to Buyer's rights under the APA, may be subject to change as a result of the Bankruptcy Court's calendar and availability):

(i) On or before July 13, 2015, the Seller shall file (i) a motion seeking approval of the Proposed Sale, the APA, the Bidding Procedures, and entry of the Sale Order (the "Sale Motion"), (ii) the proposed Bidding Procedures Order (the "Bidding Procedures Order"), (iii) the proposed Sale Order (the "Sale Order") and (iv) an appropriate supporting declaration from the Seller, each in form and substance acceptable to the Buyer;

(ii) The Seller will request the Bankruptcy Court that within thirty (30) days of the filing of the Sale Motion, the Bankruptcy Court conducts and concludes a hearing to consider approval of the Bidding Procedures;

(iii) The Seller will request the Bankruptcy Court that at the conclusion of the hearing and approval of the Bidding Procedures, the Bankruptcy Court enters the Bidding Procedures Order;

(iv) The deadline to submit a Qualified Bid will be **November 16, 2015** (the "Bid Deadline");

(v) Within five (5) days from the Bid Deadline, an Auction, if necessary, shall have been conducted;

(vi) Within one business days from the conclusion of the Auction or, if no other Qualified Bids are received by the Bid Deadline (as defined below),

then within one business days after the Bid Deadline, the highest and best offer for the Purchased Assets shall have been selected and notified to the Bankruptcy Court; and

(vii) Within five business days after the selection and notification of the Successful Bidder to the Bankruptcy Court, the Bankruptcy Court shall hold a Sale Hearing. Thereafter, within five (5) days after the date that the Sale Order becomes a final, non-appealable order, the Proposed Sale shall have closed (subject to the satisfaction or waiver of the closing conditions of the APA or the Alternate APA, defined below, as applicable); provided that if the Buyer is not the Successful Bidder, then the Deposit shall be delivered to Buyer immediately following the Auction, and the Break-up Fee and the Expense Reimbursement shall be delivered to the Buyer immediately after the Proposed Sale has closed.

The obligations of the Buyer, the Seller and any Successful Bidder, and the consummation of the Proposed Sale, are expressly conditioned upon the entry of the Sale Order by the Bankruptcy Court approving the Proposed Sale in the Bankruptcy Case, which order shall be in form and substance acceptable to the Seller and the Buyer.

For the avoidance of doubt, the Sale Order shall find, provide, and authorize that: (A) the transfer of the Purchased Assets to the Buyer or the Successful Bidder is for fair consideration, not subject to avoidance as a fraudulent transfer or otherwise, and effectuated free and clear of any and all liens, claims, liabilities, encumbrances, rights of first refusal, third party required consents, and any other interests, pursuant to sections 363(b) and 363(f) of the Bankruptcy Code; (B) neither the Buyer or the Successful Bidder nor any of the respective affiliates or representatives or the Purchased Assets shall have any successor or transferee liability of any kind, nature or character whatsoever, (C) both the Buyer and the Successful Bidder and their respective affiliates and representatives have acted in "good faith" within the meaning of section 363(m) of the Bankruptcy Code and are entitled to all of the protections thereof; and (D) the Purchase Price and the release of liens of TDF upon the Closing Date, constitutes reasonably equivalent value and fair consideration for the Purchased Assets.

## **Bidding Process and Selection of Successful Bidder for the Proposed Sale of the Purchased Assets**

Set forth below are the Bidding Procedures for the Bidding Process for approval with respect to the Proposed Sale of the Purchased Assets to the Buyer or the Successful Bidder. The Proposed Sale is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court pursuant to sections 363 and

365 of the Bankruptcy Code.

## Participation Requirements

Any person or entity (a "Potential Bidder") who wishes to participate in the Bidding Process must be a "Qualified Bidder". A Qualified Bidder is a person or entity:

(i) who has delivered to the Seller on or before the Bid Deadline a bid that constitutes a Qualified Bid (as defined below) for the Purchased Assets and the consideration to be paid for such assets that constitutes an alternative transaction to that of the purchase of all Purchased Assets by the Buyer under the terms of the APA (the "Alternative Transaction");

(ii) whose financial information and credit-quality demonstrate the operational and financial capability (without a financing contingency) to consummate the sale of the Purchased Assets and whom the Seller in good faith determines is reasonably likely (based on availability of funds, experience and other considerations) to be able to consummate a transaction based on the Alternative Transaction if selected as the Successful Bidder. In order to satisfy these requirements, the Qualified Bidder shall submit the following information with its bid: (a) identification of the potential bidder, its principals and the representatives who are authorized to appear and act regarding the auction, (b) disclosure of any connections or agreements between the bidder and the debtor (and any insiders of the debtor), and any other bidders, (c) written confirmation that the bidder is prepared to enter into a legally binding agreement for the acquisition on terms and conditions no less favorable to the debtor than the terms and conditions contained in the APA, including indicating that such bidder will make any required deposits and the total purchase price, and (d) any other information reasonably requested by the Seller to determine that the bidder has the operational and financial capability to close the sale. To avoid any doubt, one or more persons or entities may join together to qualify as a Qualified Bidder; and

(iii) who has timely submitted a Qualified Bid for the Purchased Assets.

In order to become a Qualified Bidder, a Potential Bidder must deliver (unless previously delivered) to the Seller a Qualified Bid, on or before November 16, 2015 at 5:00 p.m. (Prevailing Eastern Time) (the "Bid Deadline") which may be an Alternative Transaction the value of which contains an offer in cash, or in cash equivalents, to purchase the Purchased Assets with a readily ascertainable market value of no less than $75,000 in excess of the Purchase Price set forth in the APA for the Purchased Assets, and is accompanied by an executed copy of a purchase

agreement that is substantially identical to the APA (which shall not contain any term or condition making it more conditional, less favorable to the Seller, or more burdensome to the Seller, than the APA), a red-line showing any changes made from the APA and a commitment to close within five business days of having been selected as the highest and best offer as to the Purchased Assets after the Auction (the "Alternate APA"). A Qualified Bid must also:

(i) provide satisfactory evidence of committed financing or current audited financial statements or other form of financial and/or credit-quality disclosure reasonably sufficient to ascertain the Potential Bidder's ability to perform or of those entities that will guarantee the obligations of such bidder;

(ii) be accompanied by a cash deposit in the amount of $75,000 with respect to the Purchased Assets, which deposit shall be forfeited as liquidated damages to Seller if the Potential Bidder is selected as the Successful Bidder at the Auction, notified to the Bankruptcy Court, and fails or refuses to close for reasons other than the Seller's default;

(iii) be accompanied by a cover letter from the Potential Bidder stating that (a) the Potential Bidder is prepared to enter into and consummate the transactions in accordance with the terms of the Alternate APA after the Auction, (b) the Potential Bidder's offer is not contingent or conditioned on obtaining financing or on any additional due diligence, (c) the offer does not include any bid protections, including any break-up fee, expense reimbursement or similar type of fee or payment, (d) such Potential Bidder's offer is irrevocable until the date that is twenty (20) days after the conclusion of the Auction with respect to the Purchased Assets, and (e) such Potential Bidder consents to the core jurisdiction of the Bankruptcy Court and waives any right to a jury trial in connection with any disputes relating to the Auction and the construction and enforcement of the sale-related pleadings filed with the Bankruptcy Court or the Potential Bidder's bid documents; and

(iv) be accompanied by evidence of authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the submitted bid.

As promptly as practicable after a Potential Bidder delivers a Qualified Bid, the Seller shall determine and shall notify the Potential Bidder in writing, whether the Potential Bidder is a Qualified Bidder with respect to the Purchased Assets. A bid received from a Qualified Bidder prior to the Bid Deadline that meets the above requirements is a "Qualified Bid". Nothing set forth herein shall be deemed to alter or waive TDF's rights in the Purchased Assets or its rights to credit bid part or all of

its claims, pursuant to section 363 of the Bankruptcy Code and applicable law, at the Auction, if any. Notwithstanding anything to the contrary herein, Buyer and any other Qualified Bidder shall have the right to match or make a higher or better offer to the Seller.

For the avoidance of doubt, the Buyer shall be deemed to be a Qualified Bidder and the APA shall be deemed a Qualified Bid for all purposes hereunder.

### Bid Deadline

A Qualified Bidder that desires to make a bid shall deliver written copies of its bid, and all related documents identified above, to (i) Coco Beach Golf & Country Club, S.E., c/o Charles A. Cuprill, Esq. 356 Fortaleza Street, Second Floor, San Juan, Puerto Rico 00901, and to Harry O. Cook, Esq., PO Box 364225, San Juan, Puerto Rico 00936-4225, on or before the Bid Deadline.

### Due Diligence

Upon a Potential Bidder's execution of a confidentiality agreement in form and substance satisfactory to the Seller and no less restrictive than Buyer's confidentiality agreement with Seller, such Potential Bidder shall be afforded reasonable due diligence access with respect to the Purchased Assets until **November 2, 2015** (the "Due Diligence Period"). Neither the Seller nor its representatives shall be obligated to furnish any information of any kind whatsoever relating to the Purchased Assets at any time prior to or after the Due Diligence Period. Due diligence access may include on-site inspections of the Purchased Assets and such other matters which a Potential Bidder may request and as to which the Seller, in its sole discretion may agree (but such ability to conduct due diligence shall not be unreasonably withheld). The Seller will designate an employee or other representative to coordinate all reasonable requests for information and due diligence access from Potential Bidders. Seller may, in its discretion, coordinate due diligence efforts such that multiple Potential Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at site inspections. Potential Bidders shall be advised to exercise their own discretion before relying on any information regarding the Purchased Assets provided by anyone other than the Seller or its representatives.

Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to inspect and examine the Purchased Assets and to conduct any and all due diligence regarding the Purchased Assets prior to submitting its bid, that it has relied solely upon its own independent review, investigation and/or inspection of any documents in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or

otherwise, regarding the Purchased Assets, or the completeness of any information provided in connection with the Bidding Process by Seller or its respective representatives and agents, except as expressly stated in the relevant APA of the Successful Bidder approved by the Bankruptcy Court.

### Auction

Seller shall conduct an auction (the "Auction") with respect to the Purchased Assets in the event Qualified Bids are submitted by more than one Qualified Bidder prior to the Bid Deadline. Only Qualified Bidders will be eligible to participate in or attend the Auction. The Auction shall take place within five (5) days from the Bid Deadline at 10:00 a.m. (Prevailing Eastern Time) at Charles A. Cuprill, P.S.C., Law Offices, 356 Fortaleza Street, Second Floor, San Juan, Puerto Rico, or such other time or other place as the Seller shall notify the Buyer and all Qualified Bidders who have timely submitted Qualified Bids with respect to the Purchased Assets subject to Auction. The Seller shall provide copies of all Qualified Bids for the Purchased Assets to all other Qualified Bidders, including the Buyer, no less than two business days prior to the Auction. At least one business day prior to the Auction, each Qualified Bidder who has submitted a Qualified Bid for the Purchased Assets must inform the Seller in writing whether it intends to participate in the Auction (each such confirmed Qualified Bidder, the "Auction Participants"). Prior to the commencement of the Auction, the Seller will inform each Auction Participant the identity of the other Auction Participants and of the identity of the then highest Qualified Bid and the Seller's value of such bid.

At the Auction, Qualified Bidders will be permitted to increase their bids (such increased Qualified Bid, a "Qualified Overbid"), provided that each successive overbid shall exceed the then existing highest bid by at least $50,000.00. Each Qualified Bidder shall submit to the Seller at or before the Auction evidence of its financial capability or committed financing sufficient to close on its offer based on any incremental Qualified Overbid, provided that such Qualified Overbid shall not be contingent on financing.

The Auction shall not conclude until each Qualified Bidder has the opportunity to submit, while present at the Auction, a Qualified Overbid with full knowledge of the then existing highest bid. Based upon the terms of the Qualified Overbids received, the number of Qualified Bidders participating in the Auction, and such other information as the Seller determines is relevant, Seller may conduct the Auction in the manner it determines will achieve the maximum value for the Purchased Assets. The Seller will inform the Qualified Bidders participating in the Auction of the manner in which the Auction will be conducted (provided that in all events bidding shall take place by "open out-cry").

### Selection of the Successful Bidder

Prior to the conclusion of the Auction and following each round of bidding or, if no other Qualified Bids are received by the Bid Deadline, immediately after the Bid Deadline, the Seller shall review the Qualified Bid(s) on the basis of financial and contractual terms and the factors relevant to the Bidding Process, including those factors affecting the speed and certainty of consummating the Proposed Sale, and identify the highest or otherwise best offer for the Purchased Assets (the "Successful Bid" and the bidder making such bid, the "Successful Bidder"). At such time, Seller shall notify the Bankruptcy Court of the Successful Bid and the Successful Bidder and the results of the Auction.

### Closing Date

Subject to the terms of the Successful Bid the closing on the Proposed Sale shall occur on or before five business days after the selection and notification of the Successful Bidder to the Bankruptcy Court and the Successful Bidder and entry of the Sale Order as a final, non-appealable order (the "Closing Date"). If any such Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the next highest or otherwise best Qualified Bid or Qualified Overbid with respect to the Purchased Assets shall be deemed to be the Successful Bid with respect to the Purchased Assets and the Seller shall effectuate such sale to such next highest Successful Bid within five business days after notification thereof without further order of the Bankruptcy Court. In the event the next highest Successful Bid fails to consummate the sale, this process shall be repeated until the earlier of (i) the date the sale is consummated or (ii) the Return Date, as defined below.

### Return of Good Faith Deposit

The deposits of all Qualified Bidders shall be retained by Charles A. Cuprill, PSC Law Offices, and all Qualified Bids will remain open until the date that is twenty (20) days after the notification by the Seller of the Successful Bidder to the Bankruptcy Court (the "Return Date"). On the Return Date, the Seller shall return the deposits to all bidders who submitted bids in connection with the Purchased Assets (other than the Successful Bidder). In addition to any other remedies available to the Seller, the Seller may retain as liquidated damages the deposit of any Qualified Bidder who breaches or fails to perform any of its obligations pursuant to these Bidding Procedures or its Qualified Bid. Notwithstanding the foregoing, in the event that the Buyer is not the Successful Bidder, the Seller (i) shall return the Deposit to the Buyer immediately and (ii) pay the Break-Up Fee along with the Expense Reimbursement immediately on the closing date of the transaction with the Successful Bidder.