# Hector R Gonzalez

47 Harbour Lights Estates
Palmas del Mar
Humacao, Puerto Rico 00791-6053
Phone: (787) 380-0098
Fax: (787) 852-2696
Email: hrg@vntkg.com

Case 15-5312 (ESL)

September 3, 2015

Chief Judge Enrique S. Lamoutte
José V. Toledo Federal Building & US Courthouse
Courtroom 2
300 Recinto Sur Street
San Juan, PR 00901

Honorable Judge Lamoutte:

I respectfully wish to express my concerns regarding my economic interest as a secured creditor in the bankruptcy proceeding of Coco Beach Golf & Country Club SE.

As a private investor I personally own **$1,700,000 Term Bonds 6.50% due December 20, 2030** of -PUERTO RICO INDUSTRIAL, TOURIST, EDUCATIONAL, MEDICAL AND ENVIRONMENTAL CONTROL FACILITIES FINANCING AUTHORITY **(AFICA)** TOURISM REVENUE REFUNDING BONDS, 2011 SERIES A (TRUMP INTERNATIONAL GOLF CLUB PUERTO RICO PROJECT)- issued on March 24, 2011.

Court Records should have all relevant legal information pertaining to security and guaranty to the bondholders as summarized in the Official Statement of the aforementioned debt issuance.

I was recently informed by Banco Popular (BPPR), as trustee of the referenced AFICA bonds, of the bankruptcy of Coco Beach Golf & Country Club SE with a Notice of Default and the procedures for auctioning the property and potential sale to **OHorizons** for **$2,042,528.**

Although the bondholders are to be represented by BPPR Trust ("Trustee") in the proceedings, I am surprised not only by the low bid of the "stalking horse" compared to $24 million outstanding in AFICA bonds but by the fact that there is no mention as to how the proceeds from the sale of real and personal property (Section 363) will be applied as payment to the secured creditors that include the AFICA bondholders and TDF as guarantor to the bondholders. The total claim of approximately $32 million includes approximately $24 million from bondholders and $8 million from TDF.

As a bondholder, I am very concerned about the financial condition of TDF as guarantor to the bondholders as the financial condition of TDF reflected a deficit of over $230 million in 2013. As bondholder, I prefer to get paid 100% by TDF upon failure of the

Project. But can the potential buyer pay in kind with AFICA bonds or have bondholders finance the acquisition?

Based on the above, I hereby request legal clarification from the Court before the beginning of bidding procedures as how the proceeds from the sale of the property will be applied to the secured creditors and specifically the bondholders. It is my understanding, based on the Official Statement of the bonds, that bondholders will receive 100% of the proceeds in a foreclosure (without carve outs). It seems, legally and practically, that Section 363 of the Bankruptcy Court is equal to foreclosure proceedings.

Although the Borrower filed Bankruptcy and TDF as the guarantor continues to honor its letter of credit by paying debt service to bondholders, The Official Statement of the AFICA bond states the following in case of foreclosure of property:

*"The pledge agreement and the other security agreements provide that in the event that TDF or the issuer of any successor letter of credit fails to honor any such draw, the holders of the Bonds shall have control and access to such collateral, except to the extent of any outstanding reimbursement obligations under the Reimbursement Agreement or any successor reimbursement agreement. Accordingly, upon such failure by TDF or the issuer of any successor letter of credit, if sufficient moneys were otherwise not available in the bond fund and the debt service reserve fund for the payment of principal of and interest on the Bonds, the Trustee may institute proceedings to cause the enforcement of the Project Property Mortgage and the security interests under the security agreements, including the foreclosure of the pledge of the mortgage notes and the Project Property Mortgage. Upon such foreclosure, the Trustee would be entitled to sell the real estate and other property covered by the Project Property Mortgage and apply the proceeds of the sale to the payment of the Bonds".*

Without any legal representation and knowledge of securities law and bankruptcy proceedings, I personally believe that 100% of the proceeds from the sale should be applied to the bondholders and that TDF as guarantor should not receive anything unless bondholders are fully paid.

I hope the Court can clarify my concerns as secured creditor and bondholder.

Yours very truly,

*[signature]*

Hector R. Gonzalez