**EXHIBIT A**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF PUERTO RICO

IN RE:

**COCO BEACH GOLF & COUNTRY CLUB, S.E.**

    **Debtor**

**CASE NO. 15-05312(ESL)**

**CHAPTER 11**

### ORDER (I) AUTHORIZING DEBTOR TO OBTAIN SECURED POSTPETITION FINANCING PURSUANT TO 11 U.S.C.§§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e), AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion") dated October 8, 2015 of Coco Beach Golf & Country Club, S.E. ("Debtor") in the above-captioned case (the "Bankruptcy Case") under sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the corresponding Local Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Rules") seeking, among other things:

(1)    authorization for Debtor to obtain secured postpetition financing (the "Financing"), consisting of a secured superpriority new money debtor in possession facility in an aggregate principal amount not to exceed $3.7 million (the "DIP Loans").

(2)    authorization for Debtor to execute the [DIP Credit Agreement], dated as of October 5, 2015, substantially in the form attached as Exhibit B to the Motion (including all amendments thereto, the "DIP Credit Agreement" and collectively with any other related

agreement, instrument or other document delivered or executed in connection with the DIP Credit Agreement, including the "DIP Budget" (as defined in the DIP Credit Agreement and attached as Exhibit 1 thereto) and the "Loan Documents" (as defined in the DIP Credit Agreement), the "DIP Documents"), by and among Debtor, as Borrower, and OHorizons Global, LLC (the "DIP Lender");

(3)  authorization for Debtor to execute and enter into the related DIP Documents and to perform such other and further acts as may be required in connection with the DIP Documents;

(4)  Debtor's waiver of any right to surcharge against collateral, including the Collateral (as defined herein), under section 506(c) of the Bankruptcy Code; and

(5)  modification of the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this order (the "Order").

And the Court having found that due and sufficient notice of the Motion and the hearing on the Motion (the "Hearing") was provided by Debtor as set forth in paragraph 3 below, in accordance with the Bankruptcy Rules and the Local Rules; and the Court having held the Hearing on the Motion on October _____, 2015; and the Court having considered all the pleadings filed with this Court, including any objections to the Motion; and as further stated on the record at the Hearing; and upon the record made by Debtor at the Hearing; and upon the entire record of the

Bankruptcy Case; and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *Disposition*.  The Motion is granted on a final basis in accordance with the terms set forth herein.  Any objections to the relief sought in the Motion, and any reservations of rights with respect to such relief, that have not been previously resolved or withdrawn, are overruled on the merits.  This Order shall be valid, binding and enforceable on all parties in interest and fully effective immediately upon entry.

2.      *Commencement of the Bankruptcy Case, Jurisdiction and Venue*.  On July 13, 2015 (the "Petition Date"), Debtor filed a petition with this Court commencing a case under chapter 11 of the Bankruptcy Code.  Debtor is continuing to operate its businesses and manage its properties as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  This Court has jurisdiction over the Bankruptcy Case and the Motion as a core proceeding, and over the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  No request has been made for the appointment of a trustee or examiner.

3.      *Notice*.  Notice of the Hearing and the proposed entry of this Order has been provided to: (i) the twenty (20) largest unsecured creditors of the Debtor; (ii) the Office of the United States Trustee for the District of Puerto Rico (the "U.S. Trustee"); (iii) counsel to the DIP Lender; (iv) counsel to each of the DIP Agents; (v) all known parties asserting a lien against the Collateral; (vi) any taxing authority having a claim against Debtor; and (vii) any other party that has filed a request for notice pursuant to Bankruptcy Rule 2002 or is required to receive notice

- 3 -

under the Bankruptcy Rules and the Local Rules. The notice given by Debtor of the Hearing and the proposed entry of this Order constitutes appropriate, due and sufficient notice thereof and complies with Sections 102(1), 363 and 364 of the Bankruptcy Code, Bankruptcy Rules 4001(b) and (c) and the Local Rules, and no other notice need be provided prior to entry of this Order.

4. *Findings Regarding the Financing.*

(a) Good cause has been shown for the entry of this Order.

(b) Debtor has a critical need to obtain the Financing and use the Collateral in order to permit, among other things, the orderly continuation of the operation of its business, to maintain business relationships with vendors, suppliers and customers, to make payroll and capital expenditures. Access to sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations is vital to Debtor's restructuring efforts and the preservation and maintenance of its going concern value.

(c) Debtor is unable to obtain financing on more favorable terms from sources other than the DIP Lender under the DIP Documents and is unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. Debtor is also unable to obtain secured credit allowable under Sections 364(c)(1), 364(c)(2) or 364(c)(3) of the Bankruptcy Code without Debtor granting to the DIP Agents and the DIP Lender, subject to the Carve-Out (as defined herein) as provided for herein, the DIP Liens and the Superpriority Claims (each as defined herein) under the terms and conditions set forth in this Order and in the DIP Documents.

(d)     The Puerto Rico Tourism Development Fund ("TDF") has consented to the imposition of priming liens under Section 364(d)(1) of the Bankruptcy Code in favor of the DIP Collateral Agent, for the benefit of itself, the DIP Administrative Agent, the DIP Lender and the other "Secured Parties" (as defined in the DIP Credit Agreement) (collectively the "DIP Secured Parties").

(e)     Based on the record presented to the Court at the Hearing, the terms of the Financing and the use of the Collateral are fair and reasonable, reflect Debtor's exercise of prudent business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration.

(f)     The Financing and the use of Collateral have been negotiated in good faith and at arm's length among Debtor, the DIP Agents, and the DIP Lender, and all of Debtor's obligations and indebtedness arising under, in respect of or in connection with the Financing and the DIP Documents, including without limitation, (i) all loans incurred by or made to Debtor under the DIP Credit Agreement and (ii) any other "Obligations" (as defined in the DIP Credit Agreement), (collectively, the "DIP Obligations"), shall be deemed to have been extended by the DIP Agents and the DIP Lender and their affiliates in good faith, as that term is used in Section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by Section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of Section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(g)     Debtor has requested entry of this Order pursuant to Bankruptcy Rules 4001(c), 4001(d) and the Local Rules.  Debtor requires access to the Financing provided by the DIP Loans in order to continue its operations.

Consummation of the Financing and authorization of the use of the Collateral in accordance with this Order and the DIP Documents is therefore in the best interests of the Debtor's estate.

     5.    *Authorization of the Financing and the DIP Documents*.

    (a)    The DIP Documents are approved, and Debtor is hereby authorized to borrow money and incur indebtedness up to an aggregate principal or face amount of $3,700,000 in DIP Loans, plus interest, fees and other expenses and amounts provided for in the DIP Documents, in accordance with the terms of the DIP Documents, which only shall be used for the purposes permitted under the DIP Documents and in accordance with the DIP Budget, including (i) to provide working capital needs and Debtor's general corporate purposes, and (ii) to make payments or fund amounts otherwise permitted in this Order and the DIP Documents.

    (b)    In furtherance of the foregoing and without further approval of this Court, Debtor is authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees that may be reasonably required or necessary for Debtor's performance of its obligations under the DIP Documents, including, without limitation:

    (i)    the execution, delivery and performance of the DIP Credit Agreement and the other DIP Documents, any mortgages contemplated thereby and any exhibits attached thereto;

(ii)     the non-refundable payment to the DIP Agents and the DIP Lender of the fees referred to in the DIP Credit Agreement and in any separate fee letter agreements provided for in the DIP Credit Agreement, and reasonable costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the professionals retained by the DIP Agents and/or the DIP Lender as provided for in the DIP Documents;

(iii)     the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents for, among other things, the purpose of adding additional entities as DIP Lender and reallocating the commitments for the Financing among the DIP Lender, in each case in such form as Debtor and the holders of commitments under the Financing, as specified in the DIP Documents for the desired amendment, waiver, consent or other modification, may agree, it being understood that no further approval of the Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Documents or the DIP Obligations that do not materially and adversely impair Debtor's rights, its estate or other parties in interest (other than the parties to the DIP Credit Agreement) thereunder; and

(iv)     the performance of all other acts required under or in connection with the DIP Documents.

(c)     The DIP Documents constitute valid and binding obligations and are enforceable against Debtor in accordance with the terms thereof.  No obligation, payment, transfer or grant of security under the DIP Documents or this Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under sections

- 7 -

502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

6.     *Accounts.*

(a)     Debtor's existing cash management system and all accounts established in connection therewith and with the Financing in accordance with the DIP Credit Agreement (the "Cash Management System") shall be used for the purposes and on the terms and conditions set forth in the DIP Credit Agreement and the other DIP Documents.  Debtor is authorized and directed to establish and maintain control agreements on any such bank accounts used as part of the Cash Management System (the "Accounts") as may be required by the DIP Credit Agreement and the other DIP Documents, and the banks at which such accounts are maintained are authorized to execute and deliver such control agreements as required by this Order and the DIP Credit Agreement.  The control agreements shall confirm the first priority perfected lien on the Accounts granted pursuant to this Order in favor of the DIP Secured Parties.

(b)     Each depository institution at which Debtor maintains a depository account shall immediately share dominion and control with the DIP Collateral Agent over each such depository account of Debtor that was subject to a deposit account control agreement in favor of any such party as of the Petition Date, and, as of the date of this Order and hereafter, such deposit account control agreements shall be additionally enforceable by the DIP Collateral Agent against, and binding upon, each depository institution party thereto until the DIP Obligations

have been paid in full in cash and the DIP Credit Agreement shall have been terminated, after which such deposit account control agreements shall again be solely enforceable by the depository institution that is a party thereto.

7. *Superpriority Claims*. Pursuant to Section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against Debtor with priority over any and all administrative expenses, diminution claims and all other claims against Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment (the "Superpriority Claims"), which allowed Superpriority Claims shall be payable from and have recourse to all of Debtor's pre- and post-petition property and all proceeds thereof, subject only to the payment of the Carve-Out to the extent specifically provided for herein.

8. *Carve-Out.*

(a) A "Carve-Out Event" shall mean an "Event of Default" (as defined in the DIP Credit Agreement) or an event which with the giving of notice or lapse of time or both would constitute an Event of Default, (x) written notice of which has been given by the DIP Administrative Agent to Debtor or (y) in respect of which Debtor has knowledge of such Event of Default and fails to provide written notice to the DIP Administrative Agent within two (2) business days of obtaining such knowledge; provided that no Carve-Out Event shall be deemed to have

occurred for purposes of this Order if any such Event of Default is subsequently waived by the DIP Agents.

(b)     (i) The DIP Collateral Agent's liens on the Collateral and claims, including any Superpriority Claims, and (ii) the liens, security interests and claims of TDF, shall be subject to a carve out (the "Carve-Out") in an amount not to exceed: (A) all accrued but unpaid professional fees and disbursements of professional persons retained by Debtor by order of this Court and payable under sections 328, 330 and/or 331 of the Bankruptcy Code (collectively, the "Professional Expenses") incurred by Debtor prior to the occurrence of a Carve-Out Event (the "Pre-Carve Out Amount"), provided that such Pre-Carve Out Amount shall not exceed the amounts set forth in the DIP Budget for such items through the occurrence of such Carve-Out Event, plus (B) fees incurred and payable to the clerk of the Bankruptcy Court and to the U.S. Trustee pursuant to 28 U.S.C. § 1930, to the extent such fees were incurred prior to delivery by the DIP Administrative Agent to the Debtor of a notice of an Event of Default.  In no event shall any of the Carve-Out be used to pay any fees or expenses of any person retained in a chapter 7 case under section 326, 327 or 328 of the Bankruptcy Code.  Notwithstanding the foregoing, no portion of the Carve-Out and no portion of any amounts approved for payment prior to an Event of Default shall be utilized in a manner prohibited under the DIP Credit Agreement and paragraph [16] of this Order.

(c)     No portion of the DIP Loans, the Collateral, or the Carve-Out shall be used or be available to pay any fees, disbursements, costs or expenses incurred by any party in connection with: (i) challenging the amount, extent, validity, perfection, priority or enforceability of, or asserting any defense,

counterclaim or offset to, the DIP Obligations, or the security interests and liens of the DIP Secured Parties in respect thereof; or (ii) any investigation (including discovery proceedings), assertion, initiation or prosecution of any other claims, causes of action, adversary proceedings or other litigation against the DIP Lender or the DIP Agents.

9.     *DIP Liens*.  As security for the DIP Obligations, effective and perfected upon the date of this Order and without the necessity of the execution, recordation of filings by Debtor of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the DIP Collateral Agent of, or over, any Collateral, the DIP Collateral Agent shall receive, and is granted by Debtor, for its own benefit and the benefit of the other DIP Secured Parties, a fully perfected pledge of all equity interests in or held by Debtor, all inter-company notes or inter-company receivables due to Debtor and all other instruments of Debtor, and a fully perfected security interest in all pre-petition and post-petition assets of Debtor (including the Accounts), all property identified in clauses (a), (b) and (c) below, and in each case, all proceeds resulting therefrom (such property being collectively referred to as the "Collateral"), subject only to the payment of the Carve-Out as set forth in this Order and the DIP Credit Agreement (all such liens and security interests granted to the DIP Collateral Agent, for its benefit and for the benefit of the DIP Secured Parties, pursuant to this Order and the DIP Documents, the "DIP Liens"):

(a)     <u>First Lien on Cash Balances and Unencumbered Property</u>. Pursuant to Section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all

of Debtor's pre- and post-petition property, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date is not subject to valid, perfected and non-avoidable liens (collectively, "Unencumbered Property"), including without limitation, all inter-company notes or inter-company receivables due to Debtor, any and all of Debtor's cash and cash collateral (whether maintained with the DIP Collateral Agent or otherwise) and any investment of such cash and cash collateral, inventory, any accounts receivable, any other right to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of all subsidiaries and the proceeds of all the foregoing. Unencumbered Property shall also include Debtor's claims and causes of action under sections 502(d), 542, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code and the proceeds thereof and property received thereby whether by judgment, settlement or otherwise (collectively, "Avoidance Actions"); provided, however, that (1) upon satisfaction in full in cash of the DIP Obligations, the DIP Liens on the Avoidance Actions and the proceeds and property recovered thereunder shall automatically be released, and (2) the proceeds and property recovered or the subject of Avoidance Actions shall only be used to pay or otherwise satisfy any DIP Liens to the extent necessary after commercially reasonable efforts have been undertaken by the DIP Agents to pay or otherwise satisfy any DIP Liens from the other Collateral.

(b)      Liens Priming Prepetition Lender's Liens.   Pursuant to Section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all of Debtor's pre- and post-petition property (including, without limitation, any and all of Debtor's cash and cash collateral (whether maintained with the DIP Collateral Agent or otherwise) and any investment of such cash and cash collateral, inventory, any accounts receivable, any other right to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the proceeds of all the foregoing), whether now existing or hereafter acquired, that is subject to liens securing the debt to TDF.  Such security interests and liens in favor of the DIP Collateral Agent shall be senior in all respects to the interests in such property of TDF arising from current and future liens of TDF (including, without limitation, any liens that may be granted as adequate protection), but shall not be senior to any valid, perfected and unavoidable interests of other parties arising out of liens, if any, on such property existing immediately prior to the Petition Date, or to any valid, perfected and unavoidable interests in such property arising out of liens to which the liens of TDF become or became subject to subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

(c)      Liens Junior to Certain Other Liens.   Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all of Debtor's pre- and post-petition

property (other than the property described in clauses (a) or (b) of this paragraph [9], as to which the liens and security interests in favor of the DIP Collateral Agent, for its benefit and for the benefit of the DIP Secured Parties, will be as described in such clauses), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date (other than the liens of TDF, which shall be governed by paragraph [9(b)]) or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which liens in favor of the DIP Collateral Agent are immediately junior to such valid, perfected and unavoidable liens ("Third Party Liens").

(d)     <u>Liens Senior to Certain Other Liens</u>.  The DIP Liens shall not be (a) subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of Debtor and its estate under Section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtor or (b) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

10.     *Protection of DIP Lender's Rights*.

(a)     All Collateral shall be free and clear of all liens, claims and encumbrances, except for those liens, claims and encumbrances expressly permitted under this Order (including Third Party Liens) and the DIP Documents.

(b)     So long as there are any DIP Obligations outstanding (other than contingent indemnity obligations as to which no claim has been asserted when

all other amounts have been paid) or the DIP Lender have any "Commitments" (as defined in the DIP Credit Agreement) under the DIP Credit Agreement, TDF shall (i) take no action to foreclose upon or recover in connection with the liens granted thereto, or otherwise exercise remedies against any Collateral, and (ii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect its security interests in the Collateral unless, solely as to this clause (ii), the DIP Collateral Agent files any financing statement or other document to perfect the liens granted pursuant to this Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date.

(c)     Notwithstanding Section 362 of the Bankruptcy Code, without further order or application to the Court, the automatic stay is hereby vacated and modified to the extent necessary to permit the DIP Agents and the DIP Lender to exercise, upon the occurrence and during the continuation of any Event of Default, all rights and remedies provided for in this Order, the DIP Documents or applicable law, including, without limitation:

(i)     without prior written notice to any person, but subject to the Carve-Out in each case, exercise the DIP Administrative Agent's or the DIP Collateral Agent's remedies under any control agreement with respect to the Accounts, to order the institutions that are parties to such control agreements to immediately dishonor all withdrawals from such accounts ordered by any person other than the DIP Administrative Agent or the DIP Collateral Agent; and

(ii)     upon three (3) business days' written notice to Debtor and the U.S. Trustee (or, in the case of clause (A), immediately upon written notice) take one or more of the following actions, at the same or different times:   (A)

reduce the amount of, suspend or terminate any outstanding Commitments; (B) terminate the Financing; (C) charge default interest on the DIP Loans; (D) declare all or any portion of the DIP Loans to be due and payable; (E) subject to the Carve-Out, realize on any or all Collateral and exercise any and all remedies under the DIP Documents, any applicable control agreement and applicable law, including the right to set off or seize amounts in accounts, including the Accounts, maintained with or under control of the DIP Collateral Agent or any DIP Lender.

(d)     In any hearing before this Court within such three (3) business day period regarding any exercise of rights or remedies, the only issue that may be raised by Debtor or any party in interest shall be whether, in fact, an Event of Default has occurred.  Debtor hereby waives its right to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of any of the DIP Agents and/or the DIP Lender set forth in this Order or the DIP Documents.  In no event shall the DIP Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.  The delay or failure of any DIP Secured Party to seek relief or otherwise exercise or enforce its rights and remedies under the DIP Documents or this Order shall not constitute a waiver of such DIP Secured Party's rights or remedies hereunder, thereunder or otherwise.

(e)     Debtor is hereby authorized and directed to pay upon demand all fees, costs, expenses and other amounts payable under the terms of the DIP Documents and all other reasonable, out-of-pocket fees, costs and expenses of the DIP Agents and the DIP Lender in accordance with the terms of the DIP Documents (including, without limitation, the reasonable, out-of-pocket fees, costs and

expenses of legal counsel (including local counsel), financial advisors, collateral agents, consultants, advisors, auditors, and third-party appraisers advising or assisting such parties, and any other fees and expenses set forth in the DIP Documents (including without limitation all expenses relating to the enforcement of rights, expenses in connection with the preparation and negotiation of the DIP Documents and any amendments thereto, and other miscellaneous disbursements)).   None of such fees, costs, expenses or other amounts shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court.   All such unpaid fees, costs, expenses and other amounts owed or payable shall be secured by the Collateral and afforded all of the priorities and protections afforded to the DIP Obligations under this Order and the DIP Documents.

11.   *Limitation on Charging Expenses Against Collateral*.   Except to the extent of the Carve-Out, no expenses of administration of the Bankruptcy Case or any future proceeding that may result therefrom, including conversion of the Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral under section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agents and the DIP Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agents or the DIP Lender.

12. *Consent of TDF*.

(a) The Court finds, given the consent of TDF, and Debtor's critical need to access and use the Financing in order to continue in business and maintain and enhance the value of the Collateral (including collateral securing TDF's claim), that the interests of TDF in the Collateral is adequately protected in accordance with Section 362(d)(1)(B) of the Bankruptcy Code.

(b) The consent of TDF to the priming of its liens by the DIP Liens and the Carve-Out is limited to the Financing authorized under this Order, and shall not extend to any other post-petition financing.

13. *Perfection of DIP Liens*.

(a) Subject to the provisions of paragraph [9] above, the DIP Agents and the DIP Lender are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action (including taking or releasing any liens or pledges granted by this Order) in order to validate and perfect the DIP Liens granted to them hereunder. Whether or not any DIP Agent on behalf of the DIP Lender shall, in its sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments that may be otherwise required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens, and, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and

not subject to challenge, dispute or subordination, as of the date hereof.  The
failure of the Debtor to execute any documentation relating to the enforceability,
priority or perfection of the DIP Liens shall in no way affect the validity, perfection
or priority of the DIP Liens.

(b)    If any DIP Agent, in its sole discretion, elects to file any
financing statements, trademark filings, copyright filings, mortgages, notices of lien
or similar instruments, or otherwise to confirm perfection of the DIP Liens, Debtor
shall cooperate with and assist in such process, the stay imposed under Section 362
of the Bankruptcy Code is hereby lifted to permit the filing and recording of a
certified copy of this Order or any such financing statements, trademark filings,
copyright filings, mortgages, notices of lien or similar instruments, and all such
documents shall be deemed to have been filed and recorded at the time of and on
the date of the entry of this Order.  Upon the request of the DIP Agents, without
any further consent of any party, Debtor is authorized and directed to take,
execute, deliver and file such instruments (in each case without representation or
warranty of any kind) to enable the DIP Agents to further validate, perfect,
preserve and enforce the DIP Liens.

(c)    A certified copy of this Order may, in the discretion of the DIP
Agents, be filed with or recorded in filing or recording offices in addition to or in lieu
of such financing statements, mortgages, notices of lien or similar instruments, and
all filing offices are hereby authorized to accept such certified copy of this Order for
filing and recording.

(d)    Any provision of any lease or other license, contract or other
agreement that requires (i) the consent or approval of one or more landlords or

other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other Collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code.  Any such provision shall have no force and effect with respect to the transactions granting the DIP Liens, in such leasehold interest or the proceeds of any assignment and/or sale thereof by Debtor, in favor of the DIP Agents or the DIP Lender in accordance with the terms of the DIP Credit Agreement or this Order. Notwithstanding anything to the contrary herein and for the avoidance of doubt, the liens granted in this Order with respect to the Collateral shall include the proceeds of leased real property and are not direct liens on Debtor's leases of real property.

14.    *Preservation of Rights Granted Under the Order*.

(a)    Unless all DIP Obligations shall have been paid in full, it shall constitute an Event of Default and terminate the right of Debtor to use the Financing and/or any cash provided by the DIP Loans if there is entered (i) any modifications or extensions of this Order without the prior written consent of the DIP Lender, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Lender or the DIP Agents, or (ii) an order converting or dismissing the Bankruptcy Case.  If an order dismissing the Bankruptcy Case under Section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (A) the DIP Liens granted to the DIP Agents, the DIP Lender and the other DIP Secured Parties pursuant to this Order shall continue in full force and effect and shall maintain their priorities as provided in this Order until all DIP

Obligations shall have been paid and satisfied in full (and that such DIP Liens shall, notwithstanding such dismissal, remain binding on all parties in interest), (B) the other rights under this Order shall not be affected and (C) this Court shall retain jurisdiction, notwithstanding such dismissal to the fullest extent permitted by law, for the purposes of enforcing the liens and security interests referred to in this paragraph.

(b)     If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect (i) the validity of any DIP Obligations incurred prior to the actual receipt of written notice by the DIP Agents, of the effective date of such reversal, modification, vacatur or stay or (ii) the validity or enforceability of any lien, or the priority thereof authorized or created pursuant to the DIP Credit Agreement or this Order with respect to any DIP Obligations.  Notwithstanding any such reversal, modification, vacatur or stay, any use of cash Collateral, or DIP Obligations incurred by Debtor to the DIP Agents or the DIP Lender before the actual receipt of written notice by the DIP Agents of the effective date of such reversal, modification, stay or vacatur shall be governed in all respects by the original provisions of this Order, and the DIP Agents and the DIP Lender shall be entitled to all the rights, remedies, privileges and benefits granted in Sections 363(m) and 364(e) of the Bankruptcy Code, this Order and pursuant to the DIP Documents with respect to all uses of cash Collateral and DIP Obligations.

(c)     Except as expressly provided in this Order or in the DIP Documents, the DIP Liens and all other rights and remedies of the DIP Agents and the DIP Lender granted by the provisions of this Order and the DIP Documents shall

survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting the Bankruptcy Case to a case under chapter 7 or dismissing the Bankruptcy Case, or (ii) the entry of an order confirming a chapter 11 plan in the Bankruptcy Case.   The DIP Liens and all other rights and remedies of the DIP Agents and the DIP Lender granted by the provisions of this Order and the DIP Documents shall continue in full force and effect in this Bankruptcy Case or in any succeeding chapter 7 case under the Bankruptcy Code until the DIP Obligations are indefeasibly paid in full in cash.   Debtor shall not propose or support any plan of reorganization or liquidation or entry of any confirmation order that is not conditioned upon the indefeasible payment in full in cash of all DIP Obligations on or prior to the earlier of (i) the effective date of such plan of reorganization or liquidation, and (ii) [the Maturity Date], unless the DIP Lender and the DIP Agent shall have consented in writing to such plan.

15. *DIP Lender's Right to Credit Bid.*   The DIP Lender through the DIP Agent shall have the right to "credit bid" the full amount of their claims, including without limitation, claims on account of outstanding principal, interest and any other amounts due and owing under the DIP Documents, during any sale of Debtor's assets, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section1129(b)(2)(A)(iii) of the Bankruptcy Code.

16. *Limitation on Use of Financing Proceeds and Collateral*.   Debtor shall use the DIP Loans and the Collateral solely as provided in DIP Documents and this Order.   Debtor has released and waived any and all claims and causes of action against the DIP Agents, the DIP Lender, and their respective agents, affiliates,

subsidiaries, directors, officers, representatives, attorneys or advisors, each in their capacities as such, related to the Financing, this Order or the negotiation of the terms thereof.  Notwithstanding anything herein or in any other order by this Court to the contrary, no borrowings under the DIP Credit Agreement, Collateral, or the Carve-Out may be used to:  (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under this Order, the DIP Documents, or the liens or claims granted under this Order or the DIP Documents; (b) assert any Avoidance Actions or any other claims, counterclaims or causes of action, objections, contests or defenses against any of the DIP Agents, the DIP Lender, or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors; (c) oppose the DIP Agents' assertion, enforcement or realization on the Collateral or cash collateral in accordance with the DIP Documents or this Order; (d) seek to modify any of the rights granted to any of the DIP Agents or the DIP Lender hereunder or under the DIP Documents without such parties' prior written consent; or (e) unless such payments are approved by an order of this Court and otherwise permitted by the DIP Credit Agreement and the DIP Budget, pay any amount on account of any claims arising prior to the Petition Date.

17.    *Modifications of, and Waivers under, the DIP Documents*.  Debtor, the DIP Agents and the DIP Lender are hereby authorized to implement, in accordance with the terms of the DIP Documents, any non-material modifications (including without limitation, any change in the number or composition of the DIP Lender or the DIP Agents) of the DIP Documents without further notice, motion or application to, order of, or hearing before, this Court.  Material modifications or amendments to

the DIP Documents shall be filed with this Court and only permitted upon order of this Court, which may be obtained upon certification of counsel, provided 10 days prior written notice of such material change(s) and of the opportunity to object thereto has been given to the U.S. Trustee and TDF. Debtor, the DIP Agents and the DIP Lender shall be permitted to enter into waivers under the DIP Documents in accordance with the terms thereof without further order of this Court.

18. *Order Governs*. In the event of any inconsistency between the provisions of this Order and the DIP Documents, the provisions of this Order shall govern.

19. *Binding Effect; Successors and Assigns*. The DIP Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties in interest in this Bankruptcy Case, including, without limitation, the DIP Agents, the DIP Lender, TDF, and Debtor and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of the Debtor) and shall inure to the benefit of the DIP Agents, the DIP Lender, TDF and Debtor and their respective successors and assigns; provided, however, that the DIP Agents and the DIP Lender shall have no obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estate of the Debtor. In determining to make any loan under the DIP Credit Agreement or in exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Documents, the DIP Agents and the DIP Lender shall not be deemed to be in control of Debtor's operations or to be acting as a "responsible person" or "owner or operator" with respect to Debtor's operation or management, so long as the DIP Lender's actions do not constitute,

within the meaning of 42 U.S.C. §§ 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by Debtor, or otherwise cause liability to arise to the federal or state government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute).

20.     *Effectiveness*.     Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule or Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution of effectiveness of this Order as provided in such Rules.


Dated: _____, 2015
San Juan, Puerto Rico


_____
ENRIQUE S. LAMOUTTE

UNITED STATES BANKRUPTCY JUDGE