IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 15-05312 (ESL) |
| COCO BEACH GOLF & COUNTRY CLUB SE | CHAPTER 11 |
| | FILED & ENTERED ON MAR/27/2020 |
| Debtor | |

OPINION AND ORDER

On March 20, 2020, BANCO POPULAR DE PUERTO RICO ("BPPR"), in its capacity as trustee (the "Trustee") of the "Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority ("AFICA") Tourism Revenue Refunding Bonds, 2011 Series A (Trump International Golf Club Puerto Rico Project)" (the "Bonds") issued pursuant to the Trust Agreement dated March 30, 2011 (the "Trust Agreement"), between BPPR, as Trustee, and AFICA, informing that on January 15, 2020, PUERTO RICO TOURISM DEVELOPMENT FUND ("TDF") sent a settlement proposal to BPPR, as trustee of the Bondholders (the "TDF Proposal"). See dkt. #433. On January 29, 2020, BPPR sent Bondholders a Notice and Request for Instructions to Bondholders submitting the TDF Proposal, with a summary of its terms and conditions, and indicating that pursuant to the December 17, 2019 Order the Bondholders have thirty (30) days from the Notice to object to the TDF Proposal. See dkt. #432.

BPPR informs the following response to the TDF Proposal received as of February 28, 2020: "Out of the $22,350,000 in outstanding bonds:(a) $8,452,000, thirty-eight percent (38%) of the Bondholders of record responded to BPPR's Notice and Request for Instructions; (b) $5,460,000, twenty-four percent (24%) of the Bondholders of record rejected the TDF Proposal; (c) $2,992,000, fourteen percent (14%) of the Bondholders of record accepted the TDF Proposal. BPPR requests that this Honorable Court take note of the above detailed responses from the bondholders of record received in response to BPPR's Notice and Request for Instructions and deem BPPR in compliance with the Court's December 17, 2019 Order."

-1-

The informative motions filed by BPPR disclose the recent events related to the pending controversy before the court, that is, whether funds consigned with the Clerk of Court should be disbursed to TDF or BPPR. The same are summarized in the following paragraph.

On December 17, 2019, the court held a status conference on the instant Chapter 11 bankruptcy case (dkt. #426). The Minutes of Status Conference include the following Order: (1) P.R. Tourism Development Fund shall give written notice to Banco Popular de Puerto Rico, as trustee of Bondholders, of its proposal within thirty (30) days. (2) Banco Popular de Puerto Rico shall give notice of the proposal to bondholders fourteen (14) days thereafter, stating that they have thirty (30) days to object to the same. If no timely objection is filed, the proposal will be deemed accepted. (3) Banco Popular de Puerto Rico shall inform the court within twenty-one (21) days thereafter on the results of the bondholders' decision (dkt. #426). On February 13, 2020, the court entered an Order for BPPR and the PUERTO RICO TOURISM DEVELOPMENT FUND ("TDF") to inform within 21 days on their compliance with the Court's Order of December 17, 2019 (Dkt. No. 426). See Docket No. 430.

The recent history described above is relevant but should be placed in perspective with the past events and motions filed concerning the pending contested matter. The court narrates the same below.

On July 14, 2016, BPPR filed a request for payment of administrative fees pursuant to the terms and conditions of the Trust Agreement entered into by and between AFICA and BPPR ("Trust Agreement") and the Loan Agreement entered into by AFICA and Debtor ("Loan Agreement"), both dated March 30, 2011, alleging that the Debtor is liable to BPPR for its reasonable fees and expenses, including counsel fees, in exercising its functions as Trustee. See Section 8.05 of the Trust Agreement and Section 4.05 of the Loan Agreement (dkt. #271). BPPR requests the court allow the recovery of the post-petition administrative expenses accrued by Debtor in this case and order the payment fortto hwith of $45,506.06 to the order of BPPR.

Also, on July 14, 2016, TDF moved the court for the payment of administrative expenses (dkt. #272) alleging that prior to the Petition Date, the Debtor constructed and developed two 18-hole championship golf courses and full-service luxury club facilities located in Río Grande, as well as certain personal and other property (the "Property"), with the proceeds of certain bonds (the "Previous Bonds") issued by the Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority ("AFICA") and secured by an irrevocable stand-by letter of credit issued by TDF. The proceeds of the Previous Bonds were lent by AFICA

to the Debtor pursuant to a loan agreement where the Debtor agreed to repay the Previous Bonds. See, Proof of Claim No. 22. On March 30, 2011, AFICA issued its Tourism Revenue Refunding Bonds, 2011 Series A (Trump International Golf Club Puerto Rico Project) (the "Bonds") to refund the Previous Bonds. Similar to the Previous Bonds, the Bonds are payable from payments made by the Debtor under a certain Loan Agreement (the "Loan Agreement") between AFICA and the Debtor, and secured by, among other things, an irrevocable stand-by letter of credit (the "Letter of Credit") issued by TDF pursuant to the terms of a Letter of Credit and Reimbursement Agreement (the "Reimbursement Agreement") between TDF and the Debtor. See, Proof of Claim No. 22.

TDF alleges that the Reimbursement Agreement requires the Debtor to, among other obligations, reimburse TDF for any amounts disbursed to Banco Popular de Puerto Rico, as trustee for the benefit of the AFICA Bonds (the "Trustee"), under the Letter of Credit. To secure its obligations to TDF under the Reimbursement Agreement and to the Trustee under the Loan Agreement, the Debtor granted to TDF and the Trustee a first priority lien and security interest over substantially all of its real and personal assets, including the Property, through, among other things: (i) a pledge of mortgage notes (the "Mortgage Notes"), in an amount not less than the principal amount of the Bonds, pursuant to the terms of a Collateral Pledge and Security Agreement (Golf Course) (the "Pledge Agreement"), which Mortgage Notes are secured by a first priority mortgage lien on the real estate portion of the Sale Assets (the "Mortgage"); and (ii) a first priority security interest on, among other things, the personal property portion of the Sale Assets through a Master Security Agreement. The Pledge Agreement sets forth the relative rights and priorities of TDF and the Trustee with respect to the Mortgage and the Mortgage Notes and the proceeds thereof.

TDF concludes that pursuant to the terms of the credit relationship between TDF and the Debtor, as contained and detailed in the Proof of Claim No. 22, TDF disbursed the amount of $1,126,147.52 during the course of the instant bankruptcy proceeding (the "Disbursement"), which Disbursement was made on Debtor's behalf and for the benefit of the bankruptcy estate.

TDF bases its request under Section 503(b) of the Code which states that after notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including the actual, necessary costs and expenses of preserving the estate. 11 U.S.C. § 503(b)(1). In order to establish prima facie showing for an administrative expense under section 503(b)(1)(A) a claimant must make two allegations, that the claim arises from a transaction with the debtor's estate; and that the goods or services provided helped the estate's business to

-3-

function. TDF alleges that it should be entitled to an administrative claim under section 503(b)(1) of the Bankruptcy Code as a result of the Disbursement made on Debtor's behalf during the course of the instant bankruptcy proceedings. TDF prays that an order be entered under section 503(b) of the Bankruptcy Code directing the Debtor to immediately and forthwith pay the total sum of $1,126,147.52.

On September 16, 2016 the Debtor replied to the application for reimbursement of expenses (dkt. #285), stating that TDF's disbursement of its claim for administrative expenses must be in accordance with the provisions in Debtor's Plan of Reorganization and should be disbursed only in conjunction and upon confirmation of Debtor's Plan of Reorganization and within the amounts proposed for distribution under Class 1 of the Plan. The means for execution of Debtor's Plan of Reorganization is based on the proceeds of the sale of the assets of the estate. The proceeds of the sale have been deposited with the Clerk of the Honorable Court and the confirmed balance available for distribution as of May 19, 2016, is $2,123,095.31. The Plan of Reorganization provides that upon confirmation, allowed creditors will receive those particular amounts detailed per each class as these are defined in the Plan. As to Class 1, which accounts for the claims of "TDF" and "BPPR", these creditors will be paid: a)An initial lump sum payment equal to a determined pay-off amount of $1,000,000; b)The turnover of all amounts deposited in Debtor's Reserve Account existing at Banco Popular de Puerto Rico: c)and with a final dividend still to be determined after payment of all carve-out amounts provided and to be approved by the Plan.

On October 20, 2016 BPPR filed a reply to TDF's request for administrative expenses stating that the motion does not submit a breakdown or proof of post-petition disbursements which may constitute actual, necessary costs and expenses of preserving the estate, pursuant to 11 U.S.C. §503(b)(1); the motion fails to address and clarify the issue argued by the AFICA Bondholders at the hearing on approval of the Disclosure Statement that the AFICA Bondholders are secured creditors under Claim No. 22 in the amount of $23,125,000.00; the court does not have jurisdiction to adjudicate the creditors' rights under the Pledge Agreement involving the AFICA Bondholders and TDF; and the payment of administrative expenses are contingent on the confirmation of a plan of liquidation (dkt. #290).

On October 17, 2016 the Puerto Rico Treasury Department ("Treasury") filed a request for payment of administrative expenses on the ground that on April 27, 2016, a request for the

allowance and payment of administrative expenses in the amount of $104,543.97 was filed (dkt. #246) and the request was granted on May 20, 2016 (dkt. #249). Treasury requests the disbursement from funds consigned at the Clerk's Office of the Bankruptcy Court for the District of Puerto Rico in an amount of $104,543.97 through a check payable to the Secretary of the Treasury Department of the Commonwealth of Puerto Rico to cover allowed administrative expenses. On October 20, 2016 BPPR filed an opposition to Treasury's request (dkt. #291). BPPR claims that all funds deposited by the Debtor with the Clerk of this Honorable Court, are the proceeds from the Court-approved sale of substantially all assets of the estate, encumbered with pre-petition senior liens held by the AFICA Bondholders and TDF (as defined and discussed in Docket No. 290); Treasury did not hold a lien against substantially all assets of the estate sold to OHG pursuant to the Sale Order; Senior lienholders AFICA Bondholders and TDF have not subordinated nor carved-out their rights to other creditors of the estate, including Treasury; there is no Court order granting Treasury a senior right to the funds deposited with the Clerk of the Court; and payment of allowed administrative expenses is contingent on the availability of unencumbered funds in the estate. The court notes that the confirmed chapter 11 liquidation plan, as supplemented, and the debtor's approved distribution of funds, as described below, make this matter moot.

On July 31, 2017 BPPR filed an informative motion stating that the Coco Beach Bondholders object to the confirmation of the Supplemented Plan of Liquidation as confirmation of the Supplemented Plan of Liquidation hinges on the position of BPPR and TDF, since all funds proposed to be distributed arose from the sale of the Property which is the principal source of repayment of the Bonds and Debtor's obligations under the TDF Letter of Credit, and the distribution schedule is based on alleged consensual carve-outs for certain administrative expenses, property taxes and priority employee salaries and benefits. BPPR states that it is notifying the results in its capacity as AFICA Trustee, but that under the AFICA Trust Agreement, BPPR is not authorized to consent to or accept or adopt on behalf of any Coco Beach Bondholder any plan of reorganization, arrangement, adjustment or composition affecting the Bonds or the rights of any holder thereof or to vote in respect of the claim of any Coco Beach Bondholder in the foregoing bankruptcy proceedings. See dkt. #349.

On March 20, 2018, the court entered the following order: "Parties in interest are hereby granted twenty-one (21) days to oppose the request made by the debtor on March 14, 2018

(Docket#363) for the entry of a confirmation order of the supplemented plan of liquidation (Docket#337). If no timely opposition is filed, the court may grant the motion." (dkt. #365).

The confirmed chapter 11 liquidation plan, as supplemented, provides the following distribution:

II.SUPPLEMENTAL INFORMATION AND AMENDMENT TO PLAN OF LIQUIDATION DATED MARCH 1, 2016.

In an effort to obtain the confirmation of the Plan of Liquidation dated March 1, 2016, the Debtor hereby supplements and clarifies its Plan with the principal modifications to be implemented in furtherance of the final distribution to creditors detailed as follows.

a. Debtor's Plan of Liquidation entails the final distribution of the resulting sales proceeds obtained from the sale of estate's assets. The funds readily available for distribution as these are consigned with the Clerk of the Court are $2,125,489.50, this amount confirmed as of March 22, 2017;

b. From the funds consigned with the Clerk of the Court, upon confirmation of the Plan of Liquidation and no later than the effective date of the Plan, Debtor will pay $603,494 to allowed creditors under Classes 2, 3 and 4 as these are defined in the Plan of Liquidation.

i. Class 2 – Administrative Expenses will be paid $271,134. Refer to Exhibit 1 for a detail of claimants sharing in Distribution under this Class.

ii. Class 3 – Centro de Recaudacion de Ingresos Municipales will be paid $225,000.

iii. Class 4- Wages & Salaries entitled to Priority under 11 U.S.C. Section 507(a)(4) will be paid $107,359. Refer to Exhibit 2 for a detail of claimants sharing in Distribution under this Class.

c. After payment of the amounts allowed under these three Classes, any remaining funds consigned with the Clerk of the Court will be paid to Class 1 creditors, meaning the PR Tourism Development Fund PRTDF and Banco Popular de Puerto Rico as Trustee of the bondholders of the Tourism Revenue Refunding Bonds, 2011 Series A of Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority ("AFICA"). The distributions among these two partiesis to be either agreed by the creditors in this class or determined upon Order to be entered by the Honorable Court.

d. Notwithstanding the provisions detailed in the Plan of Liquidation dated March 1, 2016, upon the hearing held and the modifications adopted to confirm the Plan, there will be no funds available to pay any creditors under Class 8 or Article III creditors regarding government unsecured claims entitled to priority pursuant to 11 U.S.C. § 507(a)(8) of the Code.

On June 4, 2018 the court entered an order confirming the Plan of Liquidation under Chapter 11 of the Bankruptcy Code filed by debtor on March 1, 2016 (docket #337). See dkt. #376. The confirmation order is final as no appeal was taken by any party in interest.

On June 19, 2018 the debtor moved for the withdrawal of consigned funds with the Clerk of the Court in order to complete the distribution of funds consigned in amounts sufficient to cover the dividends mandated by the provisions of the Confirmed Plan of Liquidation, as Supplemented (dkt. #378).

The debtor informs that as of June 12, 2018, the funds deposited and currently in custody of the Clerk of the Court are in the amount of $2,129,085.06. From this balance of funds consigned, the Debtor requests a distribution of funds to complete the distributions to allowed creditors upon confirmation of the Plan of Liquidation as follows:

Chapter 11 Administrative Claimants: a) Approved legal fees and expenses due to Lugo Mender Group, LLC in the aggregate amount of $30,000. Refer to Dockets entries no. 330 & 345; b) Outstanding quarterly fees payable to the U.S. Trustee Office for the fees dues until the quarter ending on September 30, 2018, this in the amount of $16,650; c) Approved accounting fees and expenses due to CPA Luis R. Carrasquillo & Co. PSC in the aggregate amount of $916.98. Refer to Dockets entries no. 180 & 201; d) Internal Revenue Services, post-petition administrative expenses per claim 29-5 in the amount of $104,499.75; e) PR Treasury Department, allowance of administrative expenses taxes in the amount of $104,543.97 per Docket entry no. 236; f) State Insurance Fund Corporation, allowance of administrative expenses in the amount of $14,023.71 per Dockets entries no. 234 & 257.

Class 2: CRIM: Centro de Recaudación de Ingresos Municipales as per Proof of Claims # 1-2 & 2-2 in the amount of $225,000.

Class 3: Wages & Salaries: Wages & Salaries entitled to Priority under 11 U.S.C. Section 507(a)(4) will be paid $107,359.

The Debtor in this case prayed the court to enter an order directing the Clerk of the Court to disburse from the funds on deposit the amount of $603,994.00, in favor of the Debtor to comply with the distribution allotted to allowed administrative claimants and Class 2 and 3 creditors, as further detailed in the Plan of Liquidation confirmed on June 4, 2018. The Debtor further states that upon distribution of these funds, the remaining balance of funds in the amount of $1,525,592 will remain consigned with the Clerk of the Court in favor of Class 1 claimants, PR Tourism Development Fund PRTDF and Banco Popular de Puerto Rico as Trustee of the bondholders of the Tourism Revenue Refunding Bonds, 2011 Series A of Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority ("AFICA"). Pursuant to the terms of the confirmed Plan of Liquidation, the distribution among these two parties is to be either agreed by the creditors in this class or determined upon order to be entered by the court.

The debtor's request for withdrawal of funds was not opposed and was granted by the court on July 25, 2018 (dkt. #381). The order is final as it has not been appealed.

A bankruptcy court order confirming a Chapter 11 reorganization plan is a "final judgment," which binds the debtor, any creditor, and equity security holder to the terms and effect of the confirmed plan. 11 U.S.C.A. § 1141(a). In re A. Hirsch Realty, LLC, 583 B.R. 583 (Bankr. D. Mass. 2018); and is entitled to res judicata effect on all questions that could have been raised pertaining to the plan. In re Samson Resources Corporation, 590 B.R. 643, 66 Bankr. Ct. Dec. (CRR) 42 (Bankr. D. Del. 2018). See also In re Babilonia Santiago, 2019 WL 4621247 (Bankr. D.P.R. September 23, 2019) and In re Babilonia Santiago, 2019 WL 1752773 (Bankr. D.P.R. April 17, 2019). Therefore, the order confirming debtor's chapter 11 liquidation plan is binding on all parties.

The court now turns to determining whether TDF and BPPR are both entitled to be paid for the administrative expenses they claim, and to what extent. The court notes that neither is an over secured creditor. See In re Gianasmidis, 601 B.R. 558 (Bankr. Mass. 2019).

The court adopts the explanation in In re IDL Development, Inc., 2019 WL 5799325 (Bankr. D. Mass. November 1, 2019) as the basis for determining what is an administrative expense. The same provides that:

> "The Bankruptcy Code provides that administrative expenses include "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). Claims for administrative expenses have priority over, *inter alia*, general unsecured claims against the estate. *See* 11 U.S.C. § 507(a)(2). A party seeking priority treatment has the burden of proving entitlement to statutory priority. *Mason v. Official Comm. of Unsecured Creditors (In re FBI Distribution Corp.)*, 330 F.3d 36, 42 (1st Cir. 2003). "In general, for a claim to qualify as an administrative expense under subsection 503(b)(1), (1) it must have arisen from a transaction with the trustee or debtor in possession, rather than from a prepetition transaction with the debtor, and (2) the consideration supporting the claim must have benefitted the estate in some demonstrable way." *Id.* (citing *Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.*, 954 F.2d 1, 5 (1st Cir. 1992)). These requirements are set forth in the conjunctive and both must be met for an administrative claimant to be entitled to priority. *See, e.g., In re Hopkinton Indep. Sch., Inc.*, 499 B.R. 158, 162 (Bankr. D.N.H. 2013) (holding that "if a transaction is determined not to have benefitted the estate of the debtor, a court need not also determine whether the transaction took place with the debtor estate"). Additionally, section 503 priorities are to be construed narrowly "because of the presumption that the debtor has limited resources to equally distribute among creditors." *In re Kmart Corp.*, 290 B.R. 614, 621 (Bankr. N.D. Ill. 2003) (citing *Isaac v. Texmex Energy, Inc. (In re Amarex)*, 853 F.2d 1526, 1530 (10th Cir. 1988) and *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950, 953 (1st Cir. 1976) ("To give

priority to a claimant not clearly entitled thereto is inconsistent with the policy of equality of distribution; it dilutes the value of the priority for those creditors Congress intended to prefer.”)).”

As stated recently by the United States First Circuit Court of Appeals in In re Montreal Maine & Atlantic Railway, LTD, ___ F.3d___, 2020 WL 1224152 (1st Cir. March 10, 2020): “The idea is to ensure that, because creditors with claims for administrative expenses are entitled to priority on their claims, the sudden advent of bankruptcy does not disadvantage certain pre-petition creditors who seek to recover payments for debts arising from the expenses necessarily incurred by the debtor railroad that are similar to administrative expenses.”

BPPR’s request for payment of administrative fees is based on the terms and conditions of the Trust Agreement and Loan Agreement, both dated March 30, 2011, alleging that the Debtor is liable to BPPR for its reasonable fees and expenses, including counsel fees, in exercising its functions as Trustee. BPPR requests the court to allow the recovery of the post-petition administrative expenses accrued by Debtor in this case and order the payment forthwith of $45,506.06 to the order of BPPR. However, the fees and expenses claimed by BPPR did not benefit the estate in any measurable manner and the request rests on pre-petition contractual obligations.

TDF’s request is based on the terms of the credit relationship between TDF and the Debtor, as contained and detailed in the Proof of Claim No. 22. Although in BPPR’s pleadings regarding the payment of administrative expenses BPPR questions the supporting documentation for the amounts alleged by TDF, TDF’s proof of claim has not been specifically objected. TDF alleges to have disbursed the amount of $1,126,147.52 during the course of the instant bankruptcy proceeding (the “Disbursement”), which Disbursement was made on Debtor’s behalf and for the benefit of the bankruptcy estate. The court finds that such a fact prevails under the circumstances and travel of the case. The funds advanced allowed the debtor to continue efforts to consummate the sale of its assets for the benefit of creditors, and, thus benefited the estate.

In view of the foregoing, the court orders the Clerk of Court to disburse the balance of amounts consigned with the court to TDF.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 27th day of March 2020.

Enrique S. Lamoutte
United States Bankruptcy Judge

-9-