IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

COCO BEACH GOLF & COUNTRY CLUB, SE

    Debtor

CASE NO. 15-05312 (ESL)

CHAPTER 11

FILED & ENTERED JUL/24/2020

## OPINION AND ORDER

This case is before the court upon the motion filed by BANCO POPULAR DE PUERTO RICO ("BPPR"), in its capacity as trustee (the "Trustee") of the "Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority ("AFICA") Tourism Revenue Refunding Bonds, 2011 Series A (Trump International Golf Club Puerto Rico Project)" (the "Bonds") issued pursuant to the Trust Agreement dated March 30, 2011 (the "Trust Agreement") between BPPR, as Trustee, and AFICA to reconsider and vacate the order entered on March 27, 2020 directing the Clerk of Court to disburse the funds consigned by the Debtor pursuant to the terms of the confirmed Chapter 11 plan to the PUERTO RICO TOURISM DEVELOPMENT FUND ("TDF") (dkt. #434). See dkt. #436. TDF filed an opposition to BPPR's motion to reconsider (dkt. #452), to which BPPR replied (dkt. # 454), and TDF sur-replied (dkt. #459).

**Court Order subject to motion for reconsideration**

The court in its March 27, 2020 order ruled against BPPR and in favor of the TDF. The court's ruling is summarized below.

BPPR's request for payment of administrative fees is based on the terms and conditions of the Trust Agreement and Loan Agreement, both dated March 30, 2011, alleging that the Debtor is liable to BPPR for its reasonable fees and expenses, including counsel fees, in exercising its functions as Trustee. BPPR requests the court to allow the recovery of the post-petition administrative expenses accrued by Debtor in this case and order the payment forthwith of $45,506.06 to the order of BPPR. However, the fees and expenses claimed by BPPR did not benefit the estate in any measurable manner and the request rests on pre-petition contractual obligations.

TDF's request is based on the terms of the credit relationship between TDF and the Debtor, as contained and detailed in the Proof of Claim No. 22. Although

-1-

in BPPR's pleadings regarding the payment of administrative expenses BPPR questions the supporting documentation for the amounts alleged by TDF, TDF's proof of claim has not been specifically objected. TDF alleges to have disbursed the amount of $1,126,147.52 during the course of the instant bankruptcy proceeding (the "Disbursement"), which Disbursement was made on Debtor's behalf and for the benefit of the bankruptcy estate. The court finds that such a fact prevails under the circumstances and travel of the case. The funds advanced allowed the debtor to continue efforts to consummate the sale of its assets for the benefit of creditors, and, thus benefited the estate.

### **Position of the parties**

BPPR's motion is premised on three grounds, that TDF has a contingent and unliquidated pre-petition claim which arose from a contract preceding bankruptcy and, thus, is ineligible for an administrative expense claim; TDF's direct payment to a third-party provided no tangible benefit to the bankruptcy estate, especially when the confirmed plan provides for the liquidation of all the estate's assets—thus, any remaining unpaid claims will be discharged without recourse against debtor; and TDF failed to establish a valid claim for administrative expenses. BPPR alleges that Fed. R. Civ. 59(e) applies as the motion was filed within fourteen (14) days based on the General Order 20-03 issued by the court extending the applicable statute of limitations and that the March 27, 2020 order is a manifest error of law.

TDF in its opposition recounts the travel of the contested matter and alleges that BPPR may not under Rule 59(e) of the Fed. R. Civ. P., made applicable to bankruptcy under Fed. R. Bankr. P. 9023, introduce new evidence or arguments that could or should have been presented prior to judgment, that is, questioning TDF's right to payment as BPPR had only questioned the amounts requested. TDF further argues that it is entitled to the payment of administrative expenses for post-petition advances or disbursements made on behalf of the Debtor for the benefit of the estate. "Therefore, the Court correctly concluded that the Disbursement made by TDF during the course of the bankruptcy proceedings has administrative expense priority and should be paid with the funds consigned with the Clerk of the Court."

BPPR replied stating that "the bankruptcy court must independently determine that the claim is entitled to administrative expense status even when no objection is filed. See, In re Williams, 246 B.R. 591, 594 (B.A.P. 8th Cir. 1999) ("In contrast to proofs of claim filed under § 502, which are deemed allowed absent objection, an administrative expense claim is allowed only after determination by the court that the expense is allowable"). Thus, "[i]n contrast to proof of

claim procedures, an administrative expense is not deemed allowed absent objection." 1 Bankruptcy Law Manual § 6:33 (5th ed.). Accordingly, regardless of whether BPPR objected to TDF's request, for the request to be allowed the bankruptcy court still must determine that it qualifies as an administrative expense."

TDF sur-replied alleging that "BPPR's arguments ignore the well-settled principle of judicial economy that justifies prohibiting new arguments raised for the first time on reconsideration. Such a rule exists and applies regardless of any standard of review or evidentiary requirements. See, for instance, a decision by the First Circuit Court of Appeals in which it resolves to reject a new argument based on equity asserted for the first time on reconsideration of an order granting summary judgment, Markel Am. Ins. Co. v. Díaz-Santiago, 674 F.3d 21, 32–33 (1stCir. 2012). TDF further alleges that "had it not been for Debtor's default on its obligation under the Loan Agreement, TDF would not have made the post-petition disbursement to AFICA bondholders. Furthermore, TDF's disbursement post-petition allowed the instant proceeding to exist as a Chapter 11. Conversion to Chapter 7 would have been detrimental to creditors, resulting in unavoidable delays and higher administrative expenses. The disbursement made by TDF thus provided actual benefit to the estate."

**Motion for reconsideration standard**

A motion for reconsideration of an order or judgment is not recognized by the Federal Rules of Civil Procedure. In re Pabon Rodriguez, 233 B.R. 212, 218 (Bankr. D.P.R. 1999) aff'd, 2001 WL 958803 (1st Cir. 2001) (citing Van Skiver v. United States, 952 F. 2d 1241, 1243 (10th Cir. 1991)). Federal courts treat such a motion as either a motion to alter or amend judgment under Fed. R. Civ. P. 59(e) or a motion for relief of judgment under Fed. R. Civ. P. 60(b). "These two rules are distinct; they serve different purposes and produce different consequences. Which rule applies depends essentially on the time a motion is served. If a motion is served within fourteen (14) days of the rendition of judgment, the motion ordinarily will fall under Rule 59(e). If the motion is served after that time, it falls under Rule 60(b). Id.

In the instant case, Debtor's motion for reconsideration was filed within fourteen (14) days from the date that the dismissal order entered. Therefore, the motion will be treated as one under Fed. R. Civ. P. 59(e) made applicable here through Fed. R. Bankr. P. 9023.

Fed. R. Civ. P. 59(e) authorizes the filing of a written motion to alter or amend a judgment after its entry. The motion must demonstrate the "reason why the court should reconsider its prior decision" and "must set forth facts or law of a strongly convincing nature" to induce the court to

reverse its earlier decision. Pabon Rodriguez, 233 B.R. at 218 (citations omitted). The movant "must either clearly establish a manifest error of law or must present newly discovered evidence." Id. See also; BBVA v. Vazquez (In re Vazquez), 471 B.R. 752, 760 (B.A.P. 1st Cir. 2012), citing Aybar v. Crispin–Reyes, 118 F.3d 10, 16 (1st Cir. 1997). The party cannot use a Rule 59(e) motion to cure its own procedural failures or to introduce new evidence or advance arguments that could and should have been presented originally to the court. Id. Generally, when a party is made aware that a particular issue will be relevant to its case but fails to produce readily available evidence pertaining to that issue, the party may not introduce that evidence to support a Rule 59(e) motion. Id. Neither can the party use this motion to raise novel legal theories that it had the ability to address in first instance. Id. The federal courts have consistently stated that a motion for reconsideration of a previous order is an extraordinary remedy that must be used sparingly because of interest in finality and conservation of scarce judicial resources. Id. In practice, Fed. R. Civ. P. 59(e) motions are typically denied because of the narrow purposes for which they are intended. Id.

### Discussion

The financial background leading to the filing of the present case, the sale of Debtor's main asset and the confirmation of the Chapter 11 Liquidation Plan are unusual, mainly due to the granting of loans by government related entities in amounts that appear to far exceed the value of the collateral given. In addition, the relations between the creditors competing for the funds deposited with the Clerk of Court as a result of the sale of the real property and the terms of the confirmed chapter 11 liquidation plan are also particular, maybe on account of the economic plans in existence at the time in Puerto Rico. The court will not attempt to explain government finances and will center on the specific issue related to deciding the motion for reconsideration filed by BPPR. Notwithstanding, a recount of events in the bankruptcy case may help to understand the matter before the court.

On October 20, 2015 the Debtor moved the court for secured post-petition financing and priming of existing liens in order to obtain funds to pay for electricity to the Puerto Rico Electric Power Authority ("PREPA") in order to give proper maintenance to Debtor's main asset, a two 18-hole golf courses and country club facilities, and be able to obtain a better sales value (dkt. #86). BPPR opposed the request pointing out that the collateral valued at approximately $2,000,000 was subject to liens in excess of $20,000,000 (dkt. #111). The matter was scheduled for a hearing on October 29, 2015. The minutes of the hearing (dkt. 129) relate the key issues

-4-

regarding the pending matters in the case. The court noted that TDF was an under secured creditor and that any financing would be at the expense of the party holding the lien over the property, namely TDF. The Debtor, because of the opposition by several creditors, withdrew the request for post-petition financing. The property was not given maintenance and the sale was approved on November 20, 2015, that is, prior to confirmation.

On July 14, 2016 TDF filed the motion for allowance of administrative expenses in the amount of $1,126,147 (dkt. #272). TDF alleged as basis the terms of a Letter of Credit and Reimbursement Agreement between the Debtor and TDF, which required the Debtor to reimburse TDF for any amount disbursed to BPPR as trustee for the AFICA bonds. The agreement gave TDF a first priority lien. TDF claimed to have disbursed $1,126,147 during the course of the bankruptcy proceedings on behalf and for the benefit of the estate and is, thus, entitled to an administrative expense claim pursuant to 11 U.S.C. §503(b)(1). The Debtor opposed the request stating that any disbursement must be made in accordance with the terms of the proposed chapter 11 liquidation plan and that to such effect the amount of $2,123,195 had been deposited with the Clerk of Court, which are the proceeds of the sale. BPPR filed an opposition and objection to confirmation on October 20, 2016 (dkt. #290). BPPR states in paragraph 5 that TDF filed proof of claim number 22 as a secured creditor without an itemized amount breakdown and in paragraph 9 informs that it filed a secured claim in the amount of $17,858 for fees owed as AFICA trustee.

On May 19, 2017 TDF filed a supplement to its request for administrative expenses including a breakdown of post-petition disbursements which allegedly constitute necessary costs and expenses of preserving the estate pursuant to 11 U.S.C. §503(b)(1) (dkt. #326). The Debtor opposed alleging that the post-petition advances were used to pay interest on AFIC bonds, that management had no control over the disbursement, and that the disbursements did not benefit the estate (dkt. #329). TDF responded and among the allegations it stated that BPPR's response was based on the lack of a breakdown of amounts claimed, but the same was provided in the supplement filed on May 19, 2017 (dkt. #332).

On June 4, 2018 the court entered an order confirming the chapter 11 liquidation plan (dkt. #223), as supplemented (dkt. #337), which is the subject of BPPR's motion for reconsideration (dkt. #436).

The confirmed Chapter 11 Liquidation Plan filed on (dkt #223) provides:

CLASS 1: SECURED CLAIM WITH PR TOURISM DEVELOPMENT FUND The secured amount due under this class is in consideration to various

commercial loans granted to Debtor by creditor Puerto Rico Tourism Development Fund ("PRTDF"), a subsidiary of the Government Development Bank for Puerto Rico ("GDB"), an instrumentality of the Commonwealth of Puerto Rico. PRTDF filed the claim no. 22 in the amount of $32,667,159. Regarding this obligation, in addition to "PRTDF", Banco Popular de Puerto Rico ("BPPR") has appeared in this proceeding as Trustee of the bondholders of the Tourism Revenue Refunding Bonds, 2011 Series A of Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority ("AFICA"). This group of bondholders, although not direct creditors of the debtor, are parties in interest that may be affected by the distribution on this secured claim. BPPR filed the claim no. 26 in the secured amount of $17,858.14. Pursuant to this credit facility documents, PRTDF holds a perfected first rank senior lien in substantially all real and personal property once owned by the debtor. Upon sale of all property of the debtor, PRTDF secured interest has been fixed on the sales proceeds consigned with the Court in the amount of $2,200,000 plus the amount of funds available in the reserve account estimated as of this date in $1,144,235.98.

The Supplement to the confirmed Chapter 11 Liquidation Plan (dkt. #337) states:

After payment of the amounts allowed under these three Classes, any remaining funds consigned with the Clerk of the Court will be paid to Class 1 creditors, meaning the PR Tourism Development Fund PRTDF and Banco Popular de Puerto Rico as Trustee of the bondholders of the Tourism Revenue Refunding Bonds, 2011 Series A of Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority ("AFICA"). The distributions among these two parties is to be either agreed by the creditors in this class or determined upon Order to be entered by the Honorable Court.

On April 2, 2019 the court held a status conference/hearing. The minutes reflect that the only issue pending at the time was adjudicating the matter regarding the disbursement of consigned funds to TDF or BPPR. The parties were engaged in negotiations. The court granted the parties sixty (60) days to file a settlement agreement. See dkt. #403. Several extensions were granted but no agreement was filed. Therefore, on March 27, 2020 the court entered the opinion and order directing that the consigned funds be disbursed to TDF (dkt. #434).

After considering the motions before the court regarding whether to reconsider the March 27, 2020 order adjudicating that the funds consigned with the Clerk of Court be disbursed to the TDF and the facts before the court at the time the order was entered, the court declines to reconsider the legal conclusion in the order subject of the current matter. The arguments now before the court should have been presented before the matter was submitted after the parties

failed to reach an agreement. The uncontested facts and allegations moved the court to enter the March 27, 2020 order.

The issue of which secured creditor, TDF or BPPR, had a priority over the funds based on their respective ranking was not presented to the court. The funds to be distributed were to class one creditors, that is secured creditors, and TDF had first priority. But both parties moved the court on the same day, July 14, 2020, for the payment of administrative expenses. See dkt. #s 271 and 272. The court notes that who gets paid and in what amount does not affect the terms of the confirmed plan.

Although the funds disbursed to the debtor post-petition by TDF are based on a prepetition security agreement, the same were for the benefit of the estate, which allowed time for the sale of Debtor's main asset and ultimately, the confirmation of Debtor's chapter 11 plan. These events were not in controversy. The real property sold for $2,200,000 was encumbered in an amount exceeding $23,000,000 and the funds were to be distributed in accordance with the terms of the confirmed chapter 11 liquidation plan. The funds consigned with the Clerk of Court would be disbursed to class 1 creditors, that is, TDF and/or BPPR, depending on the agreement of the two or upon a court order. No other creditor was affected. The parties failed to reach an agreement.

The court agrees with TDF that "TDF's disbursement post-petition allowed the instant proceeding to exist as a Chapter 11. Conversion to Chapter 7 would have been detrimental to creditors, resulting in unavoidable delays and higher administrative expenses. The disbursement made by TDF thus provided actual benefit to the estate." In addition, the court also agrees with TDF that Rule 59(e) may not be used to present new arguments.

In view of the foregoing, BPPR's motion for reconsideration is denied.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 24th day of July 2020.

Enrique S. Lamoutte
United States Bankruptcy Judge

-7-